**23-1210**

---

# United States Court of Appeals for the Federal Circuit

---

**RKW KLERKS INC.,**

*Plaintiff-Appellant*,

v.

**UNITED STATES,**

*Defendant-Appellee*.

---

**Appeal from the United States Court of International Trade in Case No. 20-00001, Chief Judge Mark A. Barnett**

---

**CORRECTED**
**BRIEF OF PLAINTIFF-APPELLANT**
**RKW KLERKS INC.**


Philip Yale Simons
Jerry P. Wiskin

SIMONS & WISKIN
98 Craig Road
Manalapan, NY, NJ 07726
Tel (732) 316-2300

Patrick C. Reed

SIMONS & WISKIN
45 Broadway, Suite 2110
New York, NY 10006
Tel: (212) 669-0600

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF INTEREST

1. **Represented Entity**: RKW Klerks Inc.

2. **Real Party in Interest:** Same.

3. **Publicly Traded Parent Company:** No.

4. **Legal Representatives in this Court and Lower Court:**

   **Law Firm:** Simons & Wiskin

   **Attorneys:** Philip Yale Simons, Jerry P. Wiskin, Patrick C. Reed

5. **Related Cases:** None.

6. **Organizational Victims and Bankruptcy Cases:** None.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . iv

STATEMENT OF RELATED CASES . . . . . vii

STATEMENT OF JURISDICTION . . . . . 1

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 2

Overview . . . . . 2

The Imported Merchandise: Netwrap . . . . . 3

The Lower Court's Decision . . . . . 4

SUMMARY OF ARGUMENT . . . . . 7

ARGUMENT . . . . . 9

I. The Standard Of Review . . . . . 9

II. Netwrap Is A "Part" Of Baling Machines . . . . . 10

A. This Court's Legal Standard For A "Part" Is A Disjunctive Test . 10

B. The Lower Court Erred By Applying Both Branches Of The Legal Standard, Thereby Changing This Court's Disjunctive Test Into A Conjunctive Test . . . . . 12

1. The Parties Do Not Contest, And The Lower Court Properly Determined, That Netwrap Meets The "Dedicated Solely For Use With" Test . . . . . 12

2. The Lower Court Erroneously Required Netwrap To Meet The "Integral To The Function" Test In Addition To The "Dedicated Solely For Use With" Test . . . . . . . . . . . . . . . . . . . . . 13

C. Contrary To The Lower Court's Decision, Netwrap Is Integral To One Of A Baling Machine's Functions: Producing Bales Wrapped With Netwrap So That They Retain Their Shape . . . . . . . . . . . . . . 14

D. The Lower Court Erred By Finding the 1939 *Wilbur-Ellis* Case Instructive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1. The Facts of *Wilbur-Ellis* Are Distinguishable Because 1930s-Vintage Baling Machines Did Not Attach The Bale Ties To The Bales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2. *Wilbur-Ellis* Was Decided Under A Significantly Different Earlier Tariff Law And Before The "Dedicated Solely For Use" Test Was Introduced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

E. The Fact That Netwrap Is Disposable Or Consumable Does Not Prevent It From Being A Part . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III. Classification As A Part of Baling Machines Prevails Over Classification As Other Warp-Knit Fabric . . . . . . . . . . . . . . . . . . . . . . 24

IV. Classification As A Part of Harvesting Machinery In Heading 8433 Is Preferred, But In The Alternative Netwrap Is Classifiable As A Part Of Agricultural Machinery in Heading 8436 . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ADDENDUM ........................................................................................... 34

Slip Op. 22-115 ......................................................................... Appx1-20

# TABLE OF AUTHORITIES

***Cases:***

*ADC Telecommunications, Inc. v. United States*, 916 F.3d 1013 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,26

*Bauerhin Technologies L.P. v. United States*, 110 F.3d 774 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-13

*Bell & Howell v. United States*, 19 CCPA 126, T.D. 45263 (1931) . . . . . . . . . . 15

*Brother Int'l Corp. v. United States*, 248 F. Supp. 2d 1224 (Ct. Int'l Tr. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

*Bruce Duncan Co. v. United States,* 63 Cust. Ct. 412, C.D. 3927 (1969) . . . . . . 21

*EM Indus., Inc. v. United States*, 22 CIT 156, 999 F. Supp. 1473 (1998) . . . . . . 29

*Gallagher & Ascher Co. v. United States*, 52 CCPA 11, C.A.D. 849 (1964) . . . 11

*Geo. Wm. Rueff, Inc. v. United States*, 28 Cust. Ct. 84, C.D. 1392 (1952), *aff'd*, 41 CCPA 95, C.A.D. 535 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . 5,17,20

*Ideal Toy Corp. v. United States*, 433 F. 2d 801, 58 CCPA 9, C.A.D. 996 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984), *reh'g denied*, 739 F.2d 628 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kent Int'l, Inc. v. United States*, 393 F.Supp.3d 1218 (Ct. Int'l Trade 2019), *other issues decided*, 466 F.Supp.3d 1361 (Ct. Int'l Trade 2020), *aff'd in part and vacated and remanded in part*, 17 F.4th 1104 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Kent Int'l, Inc. v. United States*, 17 F.4th 1104 (Fed. Cir. 2021) . . . . . . . . . . 9,24

*Mita Copystar Am. v. United States*, 160 F.3d 710 (Fed. Cir. 1998) ...... 21-26

*National Carloading Corp. v. United States*, 53 CCPA 57, C.A.D. 877 (1966) ........ 21

*Pomeroy Collection, Ltd. v. United States*, 783 F. Supp.2d 1257 (Ct. Int'l Trade 2011) ........ 12

*Sigma-Tau HealthScience, Inc. v. United States*, 838 F. 3d 1272 (Fed. Cir. 2016) ........ 10

*Steel, Inc. v. United States*, 28 CCPA 77, C.A.D. 128 (1940) ........ 16

*Stoeger v. United States*, 15 Ct. Cust. App. 291, T.D. 42472 (1927) ........ 16

*Trans Atlantic Co. v. United States*, 48 CCPA 30, C.A.D. 758 (1960) ..... 11-12

*United States v. Carl Zeiss, Inc.*, 24 CCPA 145, T.D. 48624 (1936) ......... 16

*United States v. Pompeo*, 43 CCPA 9, C.A.D. 602 (1955) ......... 11,13-14,20

*United States v. Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851 (1933) ........ 10,13-18

*Wilbur-Ellis Co. v. United States*, 26 CCPA 403 (1939) ......... 5,7-8,16-20,30

***Statutes***

19 U.S.C. § 1515(a) ........ 1

28 U.S.C. § 1295(a)(5) ........ 1

28 U.S.C. § 1581(a) ........ 1

Former Paragraph 1604, Tariff Act of 1930 ........ 19-20

Harmonized Tariff Schedules of the United States (HTSUS):

Additional U.S. Rule of Interpretation 1(c) . . . . . . . . . . . . . . . . . . . . . 26-27

Note 7, Section VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

Note 8, Section VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

Heading 6005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24,28-29

Subheading 6005.39.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4,28-29

Note 2, Section XVI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,28

Heading 8433 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,19-20,24,29-30

Subheading 8533.90.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,29-30

Heading 8436 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,20,24,30

Subheading 8436.90.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,30

## STATEMENT OF RELATED CASES

1. No other appeal in or from the same civil action has previously been before this or any other appellate court.

2. Counsel for Plaintiff-Appellant RKW Klerks Inc. is not aware of any cases pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

The basis for the lower court's jurisdiction was 28 U.S.C. § 1581(a). This is a civil action commenced in the U.S. Court of International Trade to contest the denial of a protest under section 515 of the Tariff Act of 1930 (19 U.S.C. § 1515(a)).

The lower court entered Judgment on October 4, 2022 that disposed of all parties' claims. On November 27, 2022, within 60 days of the Judgment, Plaintiff-Appellant filed a timely notice of appeal.

The basis for this court's jurisdiction is 28 U.S.C. § 1295(a)(5). This is an appeal from a final decision of the U.S. Court of International Trade.

## STATEMENT OF THE ISSUES

1. (a) Is the imported netwrap, which is dedicated solely for use with baling machines to wrap bales of hay, classifiable as a "part" of baling machines?

(b) Did the lower court commit reversible error by changing this Court's two-pronged legal standard for a "part" from a disjunctive standard into a conjunctive standard?

2. Does classification as a part of baling machines prevail over classification as other warp-knit fabric?

3. Assuming that the netwrap is classifiable as a part of baling machines, are baling machines classifiable as "Harvesting ... machinery, including straw or fodder balers" or as "Other agricultural ... machinery"?

## STATEMENT OF THE CASE

This tariff classification appeal concerns a warp-knit textile netting known as netwrap that is dedicated solely for use with hay baling machines to wrap bales of hay. The netwrap was classified by U.S. Customs and Border Protection under a basket provision for other warp-knit fabrics, HTSUS subheading 6005.39.00. Plaintiff-Appellant RKW Klerks Inc. ("RKW") claims that the goods are properly classified as a part of harvesting machinery under subheading 8533.90.50 or, in the alternative, as a part of other agricultural machinery under subheading 8436.90.00.

Plaintiff-Appellant claims that the netwrap is a "part" of hay baling machines because the netwrap meets this Court's legal standard for a part of being "dedicated solely for use with" hay baling machines. It is undisputed that the netwrap meets this standard and the lower court ruled that it does. The lower court committed reversible error by changing this Court's two-pronged legal standard from a disjunctive test into a conjunctive test, as well as otherwise departing from this Court's precedents.

***The Imported Merchandise: Netwrap***

The imported merchandise is known as netwrap and is a warp-knit textile netting. Appx229-231. The netting is manufactured in Germany in various sizes from 48 inches wide by 9,840 feet in length to 67 inches wide by 10,000 feet long. Appx60, Appx69, Appx229. As imported, the netting is wound onto a cylindrical cardboard tube with a hollow core, resembling a thicker and more robust paper towel roll. Appx230-231. The cardboard core is essential to the article's use as it is the component of the netwrap to be inserted on the spindle of a hay baler. Appx54, Appx57, Appx119, Appx126, Appx276-278, Appx280. Without the core, the netwrap could not be inserted into a hay baler, and a hay bale processed by the hay baler could not be wrapped with netwrap. Appx57, Appx275-278, Appx280. In its imported condition the netwrap is also covered in a plastic packaging material. Appx51.

The netwrap in issue has only a single use: to wrap bales of hay produced in a baling machine. Appx51. The netwrap is not used for any other purpose, and is used in its imported condition without any post-importation processing. Appx51, Appx274-275.

In use, a roll of netwrap on the cardboard core is inserted into a baling machine, and the baling machine collects the hay in the field, compresses it into a bale, and wraps the bale with netwrap. Appx4, Appx275-288. The baling machine

itself wraps the bale with netwrap. Appx4, Appx45, Appx275, Appx284. When the wrapped bales are released from the baling machine, they maintain their compressed, round structure and are easier to transport. Appx258. Wrapping bales with netwrap is farmers' preferred method to produce round bales of hay because wrapped bales have better properties than unwrapped bales. Appx51, Appx55. (Netwrap is only used on baling machines that produce round bales, not rectangular bales. Appx314-315.)

***The Lower Court's Decision***

The lower court sustained Customs and Border Protection's classification of the netwrap as other warp-knit fabrics in HTSUS subheading 6005.39.00. *RKW Klerks Inc. v. United States*, 592 F. Supp.3d 1349, 1361 (Ct. Int'l Trade 2022), Appx19-20 [hereinafter *RKW*].

In reaching this conclusion, the lower court first determined that the netwrap satisfies the provisions of the warp-knit-fabric classification. *Id.* at 1356-57, Appx10-11.

With respect to the RKW's claimed parts classification, the lower court ruled that the legal standard for a "part" requires an imported item to meet two tests. *Id.* at 1357-58, Appx12-13. The court ruled that the netwrap satisfied the first test that it is "dedicated solely for use with" baling machines. *Id.* at 1358, Appx14.

The lower court then turned to its second test, stating that "[n]ext, the court must determine whether the Netwraps are an 'integral, constituent, or component part, without which' round hay balers 'could not function.'" Id. at 1359, Appx14-15. On this issue, the lower court relied heavily on *Wilbur-Ellis Co. v. United States*, 26 CCPA 403 (1939), and *Geo. Wm. Rueff, Inc. v. United States*, 28 Cust. Ct. 84, C.D. 1392 (1952), *aff'd on other grounds*, 41 CCPA 95, C.A.D. 535 (1953). The court summarized those cases as ruling that bale ties (in *Wilbur-Ellis*) and baler twine (in *Rueff*) were not "part of [a hay baler] because the function of the hay baler was to compress the bales, not to bind them." 592 F. Supp.2d at 1359, Appx14-15.

The lower then found "that the Netwraps are not integral the functioning of round hay balers." 592 F. Supp.3d at 1539, Appx15. It stated that the netwrap's function of "maintain[ing] the shape of the bale after it has been compressed and released from the baler" was "distinct" from the baling machine's function. *Id.*, Appx15. And it stated "[e]ven that without the Netwraps, round hay balers could compress crops into bale form *and* secure the bales with alternative materials [i.e., using twine instead of netwrap]." *Id.*, Appx15.

The lower court distinguished the cases cited by RKW. This was because "[r]ound hay balers ... are able to compact hay into round bales without the use of the Netwraps" and because "the Netwraps are disposable and do not remain with the hay

balers after they are wrapped around the bales of hay." 592 F. Supp.3d at 1360, Appx16; *see also* 592 F. Supp.3d at 1360-61, Appx17, Appx19 (repeating that "hay balers can produce commercially usable and saleable round bales by binding the compacted bales with twine" and that "as discussed above, without the Netwraps, a hay baler can compress the crops and wrap the compressed bales with twine.").

## SUMMARY OF ARGUMENT

Netwrap is a "part" of hay baling machines. This Court's legal standard for a "part" is a disjunctive test: an imported item must either be "integral to the function" of the article to which it is to be joined or be "dedicated solely for use with" that article.

Here, the parties do not contest, and the lower court properly determined, that netwrap meets the "dedicated solely for use with" test. This determination should have been conclusive in establishing that netwrap is a "part" of baling machines. Instead, the lower court erred by applying both branches of the legal standard, thereby changing this Court's disjunctive test into a conjunctive test. It erroneously required netwrap to meet the "integral to the function" test in addition to the "dedicated solely for use with" test.

The lower court also erred because, contrary to its decision, netwrap satisfies both tests for being a part. It satisfies the "integral to the function" test because it is integral to one of a baling machine's functions: producing hay bales wrapped with netwrap so that they retain their shape after being released. The lower court erred by finding the 1939 *Wilbur-Ellis* case instructive. The facts of *Wilbur-Ellis* are distinguishable because 1930s-vintage baling machines did not attach the bale ties to the bales—the bale ties were attached by hand after the baling machine compressed

the hay and held it in place. In contrast, modern baling machines not only compress the hay, but also wrap the bales with netwrap. And *Wilbur-Ellis* was decided under a significantly different earlier tariff law and before the "dedicated solely for use" test was introduced.

In addition, contrary to the lower court's decision, the fact that netwrap is disposable or consumable does not prevent it from being a part. Netwrap on a cardboard core for baling machines is directly analogous to toner in a toner cartridge for photocopying machines.

The lower court did not reach the issue of whether the classification as a part of baling machines prevails over the classification as other warp knit fabric. The relevant section and notes in the Harmonized Tariff Schedule make it clear that the part classification prevails.

As between classification as part of "harvesting machinery, including ... balers" or as part of "other agricultural machinery," the first classification is preferred but the second is applicable in the alternative.

# ARGUMENT

## I. The Standard of Review.

The Court recently described the standard of review in appeals from summary judgment in *Kent Int'l, Inc. v. United States*, 17 F.4th 1104, 1107-08 (Fed. Cir. 2021):

> "We review the [Trade Court's] grant of summary judgment de novo, applying 'the same standard used by the [Trade Court] in reviewing Customs' classification determination.'" *Apple Inc. v. United States*, 964 F.3d 1087, 1092 (Fed. Cir. 2020) (*quoting Otter Prods., LLC v. United States*, 834 F.3d 1369, 1374–75 (Fed. Cir. 2016)). We review the Trade Court's conclusions on legal issues de novo. *Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 667 (Fed. Cir. 2019).

The standard of review in classification cases was described in detail in *ADC Telecommunications, Inc. v. United States*, 916 F.3d 1013, 1019 (Fed. Cir. 2019):

> The classification of merchandise involves a two-step inquiry. *See LeMans*, 660 F.3d at 1315. First, we ascertain the meaning of the terms within the relevant tariff provision, which is a question of law, and, second, we determine whether the subject merchandise fits within those terms, which is a question of fact. *See Sigma-Tau HealthSci., Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016). Where, as here, no genuine dispute exists as to the nature of the subject merchandise, the two-step inquiry "collapses into a question of law we review de novo." *LeMans*, 660 F.3d at 1315 (citation omitted).

*Accord Sigma-Tau HealthScience, Inc. v. United States*, 838 F. 3d 1272, 1276 (Fed. Cir. 2016). Ultimately, "the court's duty is to find the *correct* result ...." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984), *reh'g denied*, 739 F.2d 628 (Fed. Cir. 1984).

## II. Netwrap Is A "Part" Of Baling Machines.

### A. This Court's Legal Standard For A "Part" Is A Disjunctive Test.

Plaintiff-appellant RKW claims that the imported netwrap is classified as a "part" under either the tariff provision for "Harvesting or threshing machinery, including straw or fodder balers; ...; parts thereof" in heading 8433, HTSUS, or the tariff provision for "Other agricultural ... machinery ...; parts thereof" in heading 8436, HTSUS.

In *Bauerhin Technologies L.P. v. United States*, 110 F.3d 774, 778-79 (Fed. Cir. 1997), this Court established a two-branched legal standard for determining whether an imported article is a part. Under the first branch of the legal standard, an imported item is a part if it is "integral" to the function of the article to which is to be joined, such that "'without [the part] the article to which it is to be joined, could not function as such article' ...." *Id*. at 779 (citing *United States v. Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851 (1933) (holding that a tripod is not a part of

cameras)). Under the second branch of the legal standard, the imported item is a part "where [it] is dedicated solely for use with an article." *Id*. (citing *United States v. Pompeo*, 43 CCPA 9, C.A.D. 602 (1955) (holding that a supercharger is a part of automobiles, even though automobiles could function without superchargers)).

In *Bauerhin*, the Court made it clear that the two branches of the legal standard are disjunctive, not conjunctive. *Id.* at 779 (explaining that the *Willoughby* test "is not exclusive" and "does not address the situation where an imported item is dedicated solely for use with an article."). Thus, the Court held in *Bauerhin* that imported canopies for child safety seats in automobiles were properly classified as parts of seats because they satisfied the "dedicated solely for use with" test under *Pompeo*. This was so even though the canopies did not satisfy the "integral to the function" test under *Willoughby* since the seats could function without the canopies. *Bauerhin* expressly rejected the government's argument for a conjunctive test consisting of the "integral ... to the function" test under *Willoughby* plus the "solely or principally used with" test. *Id.* at 778-79 ("We disagree.").

*Accord Gallagher & Ascher Co. v. United States*, 52 CCPA 11, C.A.D. 849 (1964) (holding that auxiliary heaters dedicated solely for use in Volkswagens are parts of automobiles even though the automobiles could function without the heaters); *Trans Atlantic Co. v. United States*, 48 CCPA 30, C.A.D. 758 (1960) (holding that

optional metal brackets for door closers are parts of door closers even though the closers could function without the brackets); *see also Pomeroy Collection, Ltd. v. United States*, 783 F. Supp.2d 1257, 1261 (Ct. Int'l Trade 2011) ("The specific question before the court is whether the *Willoughby* ***or*** *Pompeo* tests are satisfied ....") (bold italics added).

**B. The Lower Court Erred By Applying Both Branches Of The Legal Standard, Thereby Changing This Court's Disjunctive Test Into A Conjunctive Test.**

**1. The Parties Do Not Contest, And The Lower Court Properly Determined, That Netwrap Meets The "Dedicated Solely For Use With" Test.**

The lower court correctly determined that the imported netwrap is dedicated solely for use with baling machines. The court noted that "the parties do not contest the issue," *RKW, supra,* 529 F. Supp.3d at 1358, Appx14 (citing the parties' statements of uncontested material facts), and determined that "the record before the court indicates that the Netwraps are designed specifically for use in the balers." *Id.*, Appx14.

The lower court's determination that the imported netwrap is dedicated solely for use with baling machines also satisfies the language in *Bauerhin* stating that a claimed part "is not a separate and distinct commercial entity." *Bauerhin*, *supra*, 110

F.3d at 779 (applying *Pompeo* "where ... an imported item is dedicated solely for use with another article and is not a separate and distinct commercial entity"). Here, the netwrap has no other purpose, function, or commercial use except for being used with baling machines to wrap bales of hay. *RKW, supra*, 529 F. Supp.3d at 1358, Appx14. In contrast, the tripods in *Willoughby* were separate and distinct commercial entities because they could be purchased separately and could support other things besides cameras.

The lower court should have stopped right there, as soon as it determined that the imported netwrap is dedicated solely for use with baling machines. Its determination should have been conclusive under *Bauerhin* and *Pompeo* that the netwrap is a part of baling machinery.

**2. The Lower Court Erroneously Required Netwrap To Meet The "Integral To The Function" Test In Addition To The "Dedicated Solely For Use With" Test.** Instead of stopping after determining that netwrap is a part under the *Pompeo* "dedicated solely for use with" test, the lower court erroneously ruled that netwrap also needed to satisfy the "integral to the function" test derived from *Willoughby Camera*. The lower court erroneously converted the disjunctive *Bauerhin* test into a conjunctive test. *See RKW*, *supra*, 592 F. Supp.3d at 1359, Appx14 (explaining that, having determined that netwrap satisfies the *Pompeo* test, "[n]ext,

the court must determine whether the Netwraps are an 'integral, constituent, or component part, without which' round hay balers 'could not function.'"); *see also id.* at 1358, Appx12 (stating that "[i]n such cases [*i.e.*, those in which the *Pompeo* test applies], the court must determine whether the claimed part ... meets the definition ... established in *Willoughby* [sic].").

The lower court's use of an incorrect conjunctive legal standard that required both *Pompeo* and *Willoughby* to be satisfied is inconsistent with this Court's disjunctive standard set out in *Bauerhin* and constitutes reversible error.

### C. Contrary To The Lower Court's Decision, Netwrap Is Integral To One Of A Baling Machine's Functions: Producing Bales Wrapped With Netwrap So That They Retain Their Shape.

The lower court erred in the manner it applied the *Willoughby* "integral to the function" test—in addition to the error of applying the *Willoughby* test at all. According to the lower court, the netwraps "have their own distinct function—to maintain the shape of the bale after it has been compressed and released from the baler." *RKW*, *supra*, 592 F. Supp.3d at 1359, Appx15. And, according to the lower court, netwrap is not integral to the function of baling machines because the baling machines can perform the function of "compress[ing] crops into bale form *and* secur[ing] the bales with alternative materials [*i.e.*, using twine instead of netwrap]."

*Id.*, Appx15; *see also id.* at 1360-61, Appx16-19 (repeating the same idea multiple times).

On the contrary, *Willoughby* explained that the "integral to the function" test evaluates whether, without the netwrap, baling machines "could not perform *one of their proper functions* ...." *Willoughby*, 21 CCPA at 327 (italics added). This reasoning in *Willoughby* explained the earlier decision in *Bell & Howell v. United States*, 19 CCPA 126, T.D. 45263 (1931). In *Bell & Howell*, photographic color filter adaptors were classified as parts of cameras because "without the [filter adaptors], cameras could not perform one of their proper functions—the taking of colored pictures," *Willoughby*, 21 CCPA at 327, even though the filter adaptors were not needed for the camera to take black-and-white pictures.

Here, similarly, one of the proper functions of baling machines is to compress the hay into bale form and secure the bales with netwrap so that the bale retains its shape after being released from the baling machine. It is undisputed that "the [baling] machine can wrap the bales with net wrap." Appx45. The lower court's notion that "maintaining the shape of the bale" is somehow "distinct" from the function of the baling machine overlooks that one of the baling machine's functions is to produce bales that maintain their shape. The principal way the baling machine performs this function is by wrapping the bales with netwrap. Netwrap is integral to this function

of the baling machine, even though an alternative function of the machine is to secure the bales using twine.

*Accord Steel, Inc. v. United States*, 28 CCPA 77, C.A.D. 128 (1940) (holding that steel balls used in grinding machines are parts of those machines even though other things such as rocks could be used instead); *United States v. Carl Zeiss, Inc.*, 24 CCPA 145, T.D. 48624 (1936) (holding that viewfinders that were required to use the camera with a lens other than the one originally supplied with the camera were integral to the function of the camera if one of the non-original lenses is attached and, therefore, were parts of cameras); *Stoeger v. United States*, 15 Ct. Cust. App. 291, T.D. 42472 (1927) (holding that 32-shot magazine drums were parts of pistols even though the pistols were originally equipped with a 9-shot magazine).

Under *Willoughby* and similar cases, netwrap is a part of a baling machine because it is integral to the baling machine's function of wrapping bales with netwrap so that they retain their shape after being released from the baler.

## D. The Lower Court Erred By Finding the 1939 *Wilbur-Ellis* Case Instructive.

**1. The Facts of *Wilbur-Ellis* Are Distinguishable Because 1930s-Vintage Baling Machines Did Not Attach The Bale Ties To The Bales.** The lower court's decision appears to have been heavily influenced by *Wilbur-Ellis Co. v. United*

*States*, 26 CCPA 403, C.A.D. 47 (1939), as well as by the Customs Court's decision in *Geo. Wm. Rueff, Inc. v. United States*, 28 Cust. Ct. 84, C.D. 1392 (1952) (following *Wilbur-Ellis* on "parts" issue with respect to baling twine instead of bale ties), *aff'd on other grounds*, 41 CCPA 95, C.A.D. 535 (1953) (no appeal of "parts" issue). *See RKW*, 592 F. Supp.3d at 1359, Appx14-15 (finding "the reasoning behind the decisions in [*Wilbur-Ellis* and *Rueff*] instructive").

*Wilbur-Ellis* held that steel bale ties used to secure bales of hay were "not integral, constituent, or component parts of hay balers." *Wilbur-Ellis*, 26 CCPA at 406 (citing *Willoughby*). There is a critical factual distinction between *Wilbur-Ellis* and the case at bar, however: the 1930s-vintage baling machines evaluated in *Wilbur-Ellis* did not attach the steel bale ties to the bales. They did not produce hay bales that were tied or secured with bale ties. Instead, the baling machines simply compressed the hay and held it in place so that the bale ties could be attached by hand. The court explained that:

> It appears from the record ... that in the operation of a hay baler loose hay is fed into a chamber and compressed into the form of a bale between two ridged wooden blocks by means of a plunger operated by a gasoline engine; that the bale ties are ***manually*** passed through the ridges in the wooden blocks and around the hay, and their two ends are ***manually*** brought together and securely tied. ***The entire operation, so***

> ***far as the bale ties are concerned, is performed manually, and is entirely apart from any function performed by the hay baler*.**

26 CCPA at 406 (bold italics added).

Thus, in the context of the 1930s-vintage baling machines, the reason the bale ties were not integral to any function of the baling machines was that the functions of those baling machines did not include attaching the bale ties. Passing the bale ties around the bales and tying the ends of the bale ties together was, as the court stated, *"entirely apart from any function performed by the hay baler*" (italics added) because the baler did not pass the bale ties around the bales or tie the bale ties together.

Here, in contrast, it is undisputed that "the [baling] machine can wrap the bales with net wrap." Appx45. Modern baling machines do not merely compress the hay so that netwrap can be manually passed around the bale. Instead, as discussed in Point C above, it is the modern baling machine itself that wraps the bales with netwrap. The functions of modern baling machines include not only compressing the hay, but also wrapping the bales with netwrap so that they retain their shape after being released from the baler. The netwrap is integral to that function. This means that netwrap satisfies the *Willoughby* "integral to the function" test even though the 1930s-vintage steel bale ties did not satisfy the test with respect to the less technologically advanced baling machines of the time.

**2. *Wilbur-Ellis* Was Decided Under A Significantly Different Earlier Tariff Law And Before The "Dedicated Solely For Use With" Test Was Introduced.** In addition to the factual distinctions noted above, *Wilbur-Ellis* was decided under a tariff nomenclature twice removed from the HTSUS—the original paragraph format of the Tariff Act of 1930.

Former Paragraph 1604 of the Tariff Act of 1930, under which the bale ties were classified in *Wilbur-Ellis*, provided for:

> Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: Provided, That no article specified by name in Title I shall be free of duty under this paragraph.

In fact, *Wilbur-Ellis* held that the bale ties in issue were classifed duty-free under paragraph 1604 as "agricultural implements," rather than "parts" of agricultural implements.

The differences between Paragraph 1604 and HTSUS Headings 8433 and 8436 are readily apparent. Claimed Heading 8433 provides for:

> Harvesting or threshing machinery, including straw or fodder balers; grass or hay mowers; machines for cleaning, sorting or grading eggs,

> fruit or other agricultural produce, other than machinery of heading 8437; parts thereof:
>
> ....

And claimed Heading 8436 provides for:

> Other agricultural, horticultural, forestry, poultry-keeping or bee-keeping machinery, including germination plant fitted with mechanical or thermal equipment; poultry incubators and brooders; parts thereof:
>
> ....

Neither heading 8433 or 8436 includes or reenacts the 1930 language "agricultural implements." Paragraph 1604 of the Tariff Act of 1930 had no provision for balers, whereas HTSIS heading 8433 does.

In addition, *Wilbus-Ellis* was decided some 15 years before the "dedicated solely for use with" test was introduced in *Pompeo*, *supra*. While it may be unclear whether the steel bale ties in *Wilbur-Ellis* were dedicated solely for use with 1930s-vintage baling machines, the change in the legal standard for finding an article to be a "part" provides an additional reason to give little or no weight to *Wilbur-Ellis*. Similarly, the 1952 *Rueff* decision of the Customs Court was also rendered before *Pompeo*, and no appeal was taken on the "parts" issue.

**E. The Fact That Netwrap Is Disposable Or Consumable Does Not Prevent It From Being A Part.**

The lower court erroneously ruled that netwrap is "a disposable input and not a part of round baling machines." *RKW*, *supra*, 592 F. Supp.3d at 1360, Appx18. On the contrary, the fact that an item may be disposable or consumable does not mean that it does not satisfy this Court's legal definition of part of being either "integral to the function" of the article of which it is a part or "dedicated solely for use with" that article.

The legal definition of part does indeed include a disposable input that is consumed during its use. In *National Carloading Corp. v. United States*, 53 CCPA 57, C.A.D. 877 (1966), the court held that spark plugs were classifiable as parts of internal combustion engines, as opposed to parts of automobiles, thereby exempting them from appraisement as parts of automobiles. It is common knowledge that spark plugs are consumed in their use and must be replaced when they are worn out. *Accord Bruce Duncan Co. v. United States,* 63 Cust. Ct. 412, C.D. 3927 (1969) (holding that butane cartridges were parts of cigarette lighters even though the butane contained in a cartridge would be used up during its use).

Similarly, in *Mita Copystar Am. v. United States*, 160 F.3d 710 (Fed. Cir. 1998), toner cartridges for photocopying machines were held to be parts of

photocopying machines even though the cartridges were disposable units that were discarded after the toner was used up and the cartridge was empty. *Accord Brother Int'l Corp. v. United States*, 248 F. Supp. 2d 1224 (Ct. Int'l Tr. 2002) (same result for printer cartridges containing PET film).

The lower court's attempt to distinguish *Mita Copystar* and *Brother* is entirely unpersuasive. The lower court noted that the toner cartridges and printing cartridges "stayed with the photocopiers and ... machines for the entirely of their useful life—the cartridges were only disposed of once they became useless," whereas "the Netwraps ... perform their intended function—to hold the form of the bales—*after* the bales have left the baling machines." *RKW*, *supra*, 592 F. Supp.3d at 1360 n.11, Appx18. The lower court did not take into consideration that the toner or the PET film in the cartridges continues to perform its function of creating an image on paper after the paper has left the copying machine, whereas the cardboard core on which the netwrap is wound remains in the baler and is disposed of once it is empty.

In fact, in *Mita Copystar*, this Court discussed the analogy to a typewriter, explaining that "a ribbon spool carrying a roll of print ribbon is a 'part' of a typewriter, while the paper on which the typewriter imprints letters is not a part of the typewriter, but 'mere material upon which the typewriter is designed to operate.'" *Mita Copystar*, 160 3d at 713 (quoting the lower court's decision). Here, the hay is

material on which the baling machine is designed to operate, while the netwrap on its cardboard core is part of the baling machine analogous to the ribbon spool containing the typewritten ribbon. The netwrap wrapped around the hay is analogous to the ink imprinted from the ribbon on the paper, or the toner imprinted on the paper in the photocopying machine. *See id.* ("toner is not ordinarily regarded as the material upon which the photocopy machine operates").

The lower court also tried to distinguish *Mita Copystar* and *Brother* by asserting that "the products in *Mita Copystar* and *Brother* were classified according to the functionality of the containers—delivery systems for the toner and PET film, respectively—and not by the substances contained within." *RKW*, *supra*, 592 F. Supp.3d at 1361, Appx18. This reasoning misapprehended the facts of those cases. In *Mita Copystar*, the overruled competing classification (instead of parts) was chemical preparations for photographic uses, *i.e.*, the substance contained in the toner cartridge. In *Brother*, similarly, the overruled competing classification was photographic film, the substance contained in the printing cartridge. Here, the product in its condition as imported consists of netwrap wound on a cardboard core. Again, the netwrap is directly analogous to the toner or the PET film in the cartridge, and the cardboard core is analogous to the cartridge containing the toner or PET film.

Finally, the lower court tried to distinguish *Mita Copystar* and *Brother* by repeating its erroneous decision that the netwrap does not satisfy the legal standard of being "integral" to the functions of the baling machine, since twine can be used instead. *See RKW*, *supra*, 592 F. Supp.3d at 1361, Appx19 (stating that "while the toner and printing cartridges were necessary to the operation of the machines they were used with ..., without the Netwraps, a hay baler can compress and wrap the compressed bales with twine."). As discussed above in Point C, under *Willoughby* netwrap is integral to one of the functions the baling machines because, without the netwrap, the baling machine cannot perform its function of wrapping bales with netwrap so that the bales retain their shape.

## III. Classification As A Part of Baling Machines Prevails Over Classification As Other Warp-Knit Fabric.

As of result of its erroneous ruling that netwrap is not a part of baling machines, the lower court did not reach the issue of whether the classification as a part of baling machines in heading 8433, or alternatively heading 8436, prevails over the classification as other warp-knit fabrics in heading 6005. In a recent case in which the lower court did not reach certain issues, this Court vacated the relevant part of the lower court's judgment and remanded the case for consideration of the undecided issues. *Kent Int'l, Inc. v. United States*, *supra*, 17 F.4th at 1111.

In the present case, however, no remand is necessary. There is controlling statutory language that requires the part classification in chapter 84 to prevail over the other-warp-knit-fabric classification in chapter 60. Section Note 2 to Section XVI (chapters 84 and 85), HTSUS, provides in relevant part that:

> 2. ... [P]arts of machines ... are to be classified according to the following rules:
> (a) Parts which are goods included in any of the headings of chapter 84 or 85 (other than [certain headings not applicable here]) are in all cases to be classified in their respective headings;
> (b) Other parts, if suitable for use solely or principally with a particular kind of machine, ... are to be classified with the machines of that kind or in [certain headings not applicable here] as appropriate. ....
> (c) [not applicable here].

Here, note 2(a) does not apply because the competing heading is in chapter 60, not chapter 84 or 85. Therefore, the netwrap is "[o]ther parts" under note 2(b), and that note classifies the netwrap with the machines of which the netwrap is a part, namely, heading 8433 or 8436.

*Mita Copystar Am. v. United States*, *supra*, 160 F.3d at 713-14, is directly analogous. There, the competing provisions were parts of a machine classified in chapter 90 and chemical preparations in chapter 37. Chapter 90 includes a chapter note 2(b) equivalent in substance to section note 2(b) to section XVI (except for applying to chapter 90 instead of chapters 84 and 85). After the Court overruled the

lower court's interpretation of a section note covering chapter 37, the Court held that chapter note 2(b) to chapter 90 required the toner cartridges to be classified in chapter 90 and not chapter 37:

> Absent the prohibition of note 2 of section VI, the trial court's conclusion that the toner cartridges are "parts" of photocopy machines within the meaning of subheading 9009.90.00 is dispositive of the classification issue in this case. As the trial court pointed out, note 2(b) of chapter 90 requires that parts of particular machines, instruments, or apparatus "are to be classified with the machines, instruments or apparatus of that kind." That note resolves any conflict between subheading 3707.90.60 and subheading 9009.90.00, and makes clear that subheading 9009.90.00 applies to the toner cartridges at issue in this case.

*Id.*, 160 F.3d at 714. Here, analogously, the conclusion that netwrap is a "part" is dispositive of the classification issue because note 2(b) to section XVI make clear that heading 8433 or 8633 applies to the netwrap in this case. *Accord ADC Telecommunications, Inc. v. United States*, *supra*, 916 F.3d at 1022-23 (ruling that the relevant section and chapter notes were conclusive in determining that the imported merchandise was not classifiable in the claimed tariff provision).

Under *Mita Copystar*, moreover, section note 2(b) to Section XVI prevails over Additional U.S. Rule of Interpretation 1(c) ("AUSRI 1(c)"), which provides that *"[i]n the absence of special language or context which otherwise requires*, ... (c) a

provision for parts of an article covers products solely or principally used as a part of such articles but a provision for 'parts' ... shall not prevail over a specific provision for such part or accessory" (italics added). Here, section note 2(b) to section XVI is "special language ... which otherwise requires" that excludes application of AUSRI 1(c). *See Kent Int'l, Inc. v. United States*, 393 F.Supp.3d 1218, 1223-24 (Ct. Int'l Trade 2019) (ruling that a chapter note is "special language" that supersedes AUSRI 1(c)), *other issues decided*, 466 F.Supp.3d 1361 (Ct. Int'l Trade 2020), *aff'd in part on other grounds and vacated and remanded in part on other grounds*, 17 F.4th 1104 (Fed. Cir. 2021) (AUSRI 1(c) interpretation not appealed).

Additional statutory language applicable to the choice between chapter 60 and chapter 84 in this case is found in section notes 7 and 8 to Section VI (covering textiles and textile articles), HTSUS. These section notes provide in relevant part that:

> 7. For purposes of this section, the term "made up" means:
>
> ...
>
> (b) Produced in the finished state, ready for use (or merely needing separation by cutting dividing threads) without sewing or other working (for example, certain dusters, towels, tablecloths, square scarves, blankets);
>
> ...
>
> 8. For the purposes of chapters 50 to 60:

> (a) Chapters 50 to 55 and 60 and, except where the context otherwise requires, chapters 56 to 59, do not apply to goods made up within the meaning of note 7 above; ...

Here, it is undisputed that netwrap does not undergo further manufacturing or processing after importation. Appx 262. Thus, netwrap is "[p]roduced in the finished state, ready for use," satisfying the definition of "made up," and is not classifiable in chapter 60.

Even if section note 2(b) to section XVI and section notes 7 and 8 to section VI were not dispositive, the parts classification in chapter 84 prevails over the fabric classification in chapter 60 under AUSR 1(c). This is because the specific provision in which the netwrap was classified is a basket provision, subheading 6005.39.00. It provides for:

| | |
|---|---|
| 6005 | Warp knit fabrics (including those made on galloon knitting machines), other than those of headings 6001 to 6004: |
| | ... |
| | Of synthetic fibers: |
| | ... |
| 6005.39.00 | Other, printed. |

Subheading 6005.39.00 is a basket or residual provision because the superior heading 6005 applies to warp-knit fabrics "*other than those*" of preceding headings and the subheading itself applies to "*other*" printed warp-knit fabrics of synthetic fibers. *See*

*EM Indus., Inc. v. United States*, 22 CIT 156, 165, 999 F. Supp. 1473, 1480 (1998) (describing a basket provision as a provision "intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading.").

It is well-settled customs jurisprudence that "a provision for parts must prevail over a mere basket provision." *Bauerhin, supra,* 110 F.3d at 779 (applying AUSRI 1(c)); *accord, e.g., Ideal Toy Corp. v. United States*, 433 F. 2d 801, 58 CCPA 9, C.A.D. 996 (1970) (same principle under prior law). Thus, chapter 84 contains the proper provision under which the netwrap in issue is classified.

In the lower court, plaintiff-appellant RKW presented additional arguments in support of its position that the chapter 84 parts classification prevails over the chapter 60 fabric classification. RKW respectfully reserves those arguments for its reply brief, if necessary, or for proceedings on remand to the lower court, if necessary.

## IV. Classification As A Part of Harvesting Machinery In Heading 8433 Is Preferred, But In The Alternative Netwrap Is Classifiable As A Part Of Agricultural Machinery In Heading 8436.

The preceding analysis in this brief establishes that the imported netwrap is classifiable as a "part" of baling machines. RKW's principal claim is that the netwrap is classified under heading 8433, specifically under subheading 8433.90.50, HTSUS.

This claims rests on the premise that baling machines are classifiable as "harvesting ... machinery, including straw and fodder balers ...." in heading 8433.

It seems clear that hay baling machines are "harvesting machinery" because that term includes balers of straw and fodder and there seems to be no reason to think that baling hay is different from baling straw or fodder. However, in the alternative, if baling machinery is not harvesting machinery, it is "other" agricultural machinery classifiable in heading 8436, HTSUS, because baling hay is an agricultural activity. *E.g.*, *Wilbur-Ellis*, *supra* (holding that bale ties holding hay bales together are "agricultural implements"). This would classify netwrap in subheading 8436.99.00, HTSUS.

## CONCLUSION

For all the foregoing reasons, Plaintiff-Appellant RKW Klerks Inc. respectfully requests the Court to reverse the judgment of the U.S. Court of International Trade and hold that the imported netwrap that was classified on liquidation under the basket provision subheading 6005.39.00, HTSUS, is properly classified as parts of hay balers under subheading 8433.90.50, HTSUS, or, in the alternative, under subheading 8439.90.00 as parts of agricultural machinery. In the further alternative, Plaintiff-Appellant requests the Court to vacate the lower court's judgment and remand the case for further proceedings consistent with this Court's decision.

Respectively submitted,

SIMONS & WISKIN
*Attorneys for RKW Klerks Inc.*

By: /s/ *Philip Yale Simons*

Philip Yale Simons
Jerry P. Wiskin
Patrick C. Reed

February 2, 2023

**CERTIFICATE OF COMPLIANCE
WITH WORD LIMITATION
IN FEDERAL CIRCUIT RULE 32(b)**

I, Philip Yale Simons, attorney for Plaintiff-Appellant, RKW Klerks Inc., relying upon the word count function of the Word-Perfect word processing program used to prepare the Brief of Appellant RKW Klerks Inc., certify that this brief complies with the word limitation in Federal Circuit Rule 32(a)(7)(B) and that it contains 7716 words (including words not included in the word limitation).

/s/ *Philip Yale Simons*
Philip Yale Simons

## CERTIFICATE OF SERVICE

I, Jerry P. Wiskin, hereby state that I am a member of the Firm of SIMONS & WISKIN, attorneys for RKW Klerks, Inc., and that on February 10, 2023, I served on Defendant-Appellee the United States one copy of the Corrected Opening Brief of Plaintiff-Appellant RKW Klerks Inc., by electronic mail addressed to: Elisa S. Solomon, Esq. and by U.S. Mail, postage paid, addressed to:

Elisa S. Solomon, Esq.
Department of Justice
Commercial Litigation Branch - Civil Division
International Trade Field Office
26 Federal Plaza
New York, NY 10078

/s/ Jerry P. Wiskin
Jerry P. Wiskin

# ADDENDUM

Slip Op. 22-115

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| RKW KLERKS INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Before: Mark A. Barnett, Chief Judge<br>Court No. 20-00001 |

**OPINION**

[The court finds that U.S. Customs and Border Protection correctly classified the subject imports. Accordingly, the court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.]

Dated: October 4, 2022

Philip Yale Simons and Jerry P. Wiskin, Simons & Wiskin, of Manalapan, NJ, for Plaintiff RKW Klerks Inc.

Aimee Lee, Assistant Director, and Elisa S. Solomon, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for Defendant United States. With them on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Justin R. Miller, Attorney-In-Charge, International Trade Field Office. Of counsel on the briefs was Fariha Kabir, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Barnett, Chief Judge: This case involves the classification of two particular types of net wrap, both of which are synthetic fabrics used to wrap round bales of harvested crops (such as hay, straw, or silage), so that when the bales are released from the baling machine they maintain their compressed, round structure and are easier to transport. Specifically, this action addresses whether Plaintiff's net wraps, TopNet and Rondotex (together, the "Netwraps"), constitute synthetic "warp knit fabrics" and U.S.

Customs and Border Protection ("CBP" or "the agency") properly classified the Netwraps under subheading 6005.39.00 of the Harmonized Tariff Schedule of the United States ("HTSUS").[1] Before the court are cross-motions for summary judgment. Pl.'s Mot. for Summ. J., ECF No. 27; Pl.'s Br. in Supp. of its Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 27–2; Def.'s Cross-Mot. for Summ. J. and Resp. in Opp'n to Pl.'s Mot. for Summ. J. and Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Cross-Mem."), ECF No. 32; Pl.'s Reply Br. to Def.'s Opp'n to Pl.'s Mot. for Summ. J. and in Opp'n to Def.'s Cross-Mot. for Summ. J. ("Pl.'s Resp. & Reply"), ECF No. 35-2; Def.'s Reply Br. in Further Supp. of its Cross-Mot. for Summ. J. ("Def.'s Reply"), ECF No. 38. RKW Klerks Inc. ("Plaintiff" or "RKW") contends that the Netwraps are properly classified under HTSUS subheading 8433.90.50 because the Netwraps qualify as "parts" of harvesting machinery, *see* Pl.'s Mem. at 3–4, or, alternatively, under subheading 8436.99.00[2] as "parts" of agricultural machinery, *see* Pl.'s Mem. at 4. The United States ("Defendant" or "the Government") maintains that the Netwraps are not "parts" of harvesting or agricultural machinery classifiable under HTSUS subheadings 8433.90.50 or 8436.99.00, respectively. *See,*

---

[1] All citations to the HTSUS are to the 2018 version, as determined by the date of importation of the merchandise. *See LeMans Corp. v. United States*, 660 F.3d 1311, 1314 n.2 (Fed. Cir. 2011). The subject merchandise was entered on August 15, 2018. *See* Def.'s Rule 56.3 Statement of Undisputed Material Facts ("Def.'s SOF") ¶ 1, ECF No. 32; Pl.'s Resp. to Def.'s SOF ¶ 1, ECF No. 35–1.

[2] In various places in its briefs, Plaintiff refers to two non-existent subheadings: 8436.90.00, *see* Pl.'s Mem. at 1, 4–5, 24–25, and 8536.99.00, *see* Pl.'s Resp. & Reply at 14. In each instance, the court understands Plaintiff to refer to subheading 8436.99.00 which covers parts of "other" agricultural machinery.

*e.g.*, Def.'s Cross-Mem. at 8. The Government contends that CBP correctly classified the Netwraps under HTSUS subheading 6005.39.00. *Id.* at 12–14. For the reasons discussed below, the court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

## BACKGROUND

### I. Material Facts Not in Dispute

The party moving for summary judgment must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." United States Court of International Trade ("USCIT") Rule 56(a). Parties filed cross-motions for summary judgment and submitted separate statements of undisputed material facts with their respective motions and responses to the opposing party's statements. *See* Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s SOF"), ECF No. 27–1; Def.'s Resp. to Pl.'s SOF; Def.'s SOF; Pl.'s Resp. to Def.'s SOF. Upon review of the parties' statements of facts and supporting exhibits, the court finds the following undisputed and material facts.[3]

RKW is an importer of two types of net wrap, TopNet and Rondotex. *See* Def.'s SOF ¶ 11; Pl.'s Resp. to Def.'s SOF ¶ 11. RKW is a subsidiary of RKW SE, a film producer that manufactures nonwoven fabrics and nettings, including shrink bottle wrap, pallet stretch hoods, gardening and greenhouse films, trash bags, and other packaging solutions, as well as raw materials. Def.'s SOF ¶ 9; Pl.'s Resp. to Def.'s SOF ¶ 9. The

[3] Citations are provided to the relevant paragraph number of the undisputed facts and response; internal citations have generally been omitted.

Netwraps are manufactured in Germany by several entities and plants owned by RKW SE. Def.'s SOF ¶ 10; Pl.'s Resp. to Def.'s SOF ¶ 10. Neither RKW SE nor any of its subsidiaries sell or produce machinery, including round balers or other harvesting machinery. Def.'s SOF ¶ 10; Pl.'s Resp. to Def.'s SOF ¶ 10.

Both TopNet and Rondotex are comprised of the same materials, are manufactured in the same manner, and serve the same function—to bind and secure crops in round bales. Def.'s SOF ¶¶ 5, 8; Pl.'s Resp. to Def.'s SOF ¶¶ 5, 8. Manufacture of the Netwraps involves a two-step process. Def.'s SOF ¶ 15; Pl.'s Resp. to Def.'s SOF ¶ 15. First, film layers are produced—one for chains and one for connecting threads. Def.'s SOF ¶ 15; Pl.'s Resp. to Def.'s SOF ¶ 15. The film layers are then cut into strips, stretched, heated, elongated, and knitted in Raschel machines, a type of knitting machine designed for making net wraps, but which could also be used to make pallet nets, another warp knit. Def.'s SOF ¶¶ 15, 17; Pl.'s Resp. to Def.'s SOF ¶¶ 15, 17. These layers of film are made up of high-density polyethylene ("HDPE"), a resin that is exclusively used for net wrap. Def.'s SOF ¶ 16; Pl.'s Resp. to Def.'s SOF ¶ 16. HDPE is a synthetic material. Def.'s SOF ¶ 16; Pl.'s Resp. to Def.'s SOF ¶ 16.

RKW developed the Netwraps as a substitute for baler twine for use in round baling machines. Def.'s SOF ¶ 23; Pl.'s Resp. to Def.'s SOF ¶ 23. Round baling machines collect harvested crops, such as grass, hay, or straw, then cut the crops into pieces, compact the pieces, and form the pieces into bale form. Def.'s SOF ¶ 21; Pl.'s Resp. to Def.'s SOF ¶ 21. After compressing the crops into bale form, round baling machines can wrap the bales with net wrap. *See* Def.'s SOF ¶ 22; Pl.'s Resp. to Def.'s

SOF ¶ 22. Some round baling machines can use either net wrap or twine to wrap round bales. *See* Def.'s SOF ¶ 24; Pl.'s Resp. to Def.'s SOF ¶ 24.

### II. Procedural History

RKW entered the Netwraps in question as a single entry, Entry No. 322-1912652-5, at the Port of Charleston, South Carolina on August 15, 2018. Def.'s SOF ¶ 1; Pl.'s Resp. to Def.'s SOF ¶ 1. CBP classified the merchandise under HTSUS subheading 6005.39.00, dutiable at ten percent *ad valorem,* and liquidated the entry on July 12, 2019. Def.'s SOF ¶ 1–2; Pl.'s Resp. to Def.'s SOF ¶ 1–2.

RKW protested the liquidation on November 12, 2019, requesting accelerated disposition. Def.'s SOF ¶ 3; Pl.'s Resp. to Def.'s SOF ¶ 3; Pl.'s SOF ¶ 2; Def.'s Resp. to Pl.'s SOF ¶ 2. CBP did not respond to the protest and, on December 12, 2019, the protest was denied by operation of law. Def.'s SOF ¶ 3; Pl.'s Resp. to Def.'s SOF ¶ 3.

## JURISDICTION AND STANDARD OF REVIEW

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a).

The court may grant summary judgment when "there is no genuine issue as to any material fact," and "the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court's review of a classification decision involves two steps. First, it must determine the meaning of the relevant tariff provisions, which is a question of law. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citation omitted). Second, it must determine whether the merchandise at issue falls within a particular tariff provision, as construed, which is a question of fact. *Id.* (citation omitted). When no factual dispute

exists regarding the merchandise, resolution of the classification turns solely on the first step. *See id.* at 1365–66; *see also Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016) (citations omitted).

The court reviews classification cases *de novo*. *See* 28 U.S.C. § 2640(a). While the court affords deference to CBP's classification rulings relative to their "power to persuade," *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)), it has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms," *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005). It is "the court's duty to find the *correct* result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

## Discussion

### I. Legal Framework

The General Rules of Interpretation ("GRI(s)") provide the analytical framework for the court's classification of goods. *See N. Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001). "The HTSUS is designed so that most classification questions can be answered by GRI 1." *Telebrands Corp. v. United States*, 36 CIT 1231, 1235, 865 F. Supp. 2d 1277, 1280 (2012), *aff'd* 522 Fed. Appx. 915 (Fed. Cir. 2013). GRI 1 states that, "for legal purposes, classification shall be determined according to the terms of the headings and any [relevant] section or chapter notes." GRI 1, HTSUS; *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007) ("The section and chapter notes are integral parts of the HTSUS, and have the same legal force as

the text of the headings."). "The first four digits of an HTSUS provision constitute the heading, whereas the remaining digits reflect subheadings." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 n.4 (Fed. Cir. 2017). Relevant here, "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the above [GRIs] on the understanding that only subheadings at the same level are comparable." GRI 6, HTSUS; *see also WWRD US, LLC v. United States*, 886 F.3d 1228, 1232 (2018).

The court considers chapter and section notes of the HTSUS in resolving classification disputes because they are statutory law, not interpretive rules. *See Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361, 1364 (Fed. Cir. 2011) (citations omitted); *see also Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 929 n.3 (Fed. Cir. 2003) (chapter and section notes are binding on the court). "Absent contrary legislative intent, HTSUS terms are to be 'construed [according] to their common and popular meaning.'" *Baxter Healthcare Corp. of Puerto Rico v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (quoting *Marubeni Am. Corp. v. United States*, 35 F.3d 530, 533 (Fed. Cir. 1994)). Courts may rely upon their own understanding of terms or consult dictionaries, encyclopedias, scientific authorities, and other reliable information. *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir. 1988); *BASF Corp. v. United States*, 35 CIT 1478, 1481, 798 F. Supp. 2d 1353, 1357 (2011). The court also may consider the Explanatory Notes to the Harmonized Commodity Description and Coding System (the "Explanatory Notes"), developed by the World

Customs Organization. *See Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 n.1 (Fed. Cir. 2013). Although the Explanatory Notes do not bind the court's analysis, they are "indicative of proper interpretation" of the tariff schedule. *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992) (quoting H.R. Rep. No. 100–576, at (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1582).

## II. Competing Tariff Provisions

Plaintiff contends that the Netwraps are properly classified under HTSUS subheading 8433.90.50 or, alternatively, 8436.99.00.[4] Pl.'s Mem. at 5. Chapter 84 covers "Nuclear reactors, boilers, machinery and mechanical appliances; parts thereof." The relevant portions of Chapter 84 of the HTSUS read:

**8433**: Harvesting or threshing machinery, including straw or fodder balers; grass or hay mowers; machines for cleaning, sorting or grading eggs, fruit or other agricultural produce, other than machinery of heading 8437; parts thereof:

**8433.90** Parts

**8433.90.50** Other

[4] Plaintiff also identified HTSUS subheading 5911.90.00 as a potential subheading under which the Netwraps could be classified, *see* Compl. ¶¶ 18–22, ECF No. 6, but did not make any arguments in support of this claim in either its opening or reply brief. HTSUS subheading 5911.90.00 covers "[t]extile products and articles, for technical uses, specified in note 7 to this chapter . . . Other." The court reviewed this subheading and finds that it does not describe the Netwraps. *See Jarvis Clark*, 733 F.2d at 874 (holding that the court has an independent obligation to determine the proper tariff classification).

**8436**: Other agricultural, horticultural, forestry, poultry-keeping or bee-keeping machinery, including germination plant fitted with mechanical or thermal equipment; poultry incubators and brooders; parts thereof:

**8436.99** Parts:

**8436.99.00** Other

Defendant contends that the Netwraps are properly classified under HTSUS subheading 6005.39.00. Def.'s Resp. at 8–9. Chapter 60 covers "knitted or crocheted fabrics." The relevant portion of Chapter 60 of the HTSUS reads:

**6005**: Warp knit fabrics (including those made on galloon knitting machines), other than those of headings 6001 to 6004:

**6005.39** Of synthetic fibers:

**6005.39.00** Other, printed

## III. Classification of the Netwraps

The GRIs govern the proper classification of merchandise and are applied in numerical order. *N. Am. Processing Co.*, 236 F.3d at 698. Pursuant to GRI 1, the court first "must determine the appropriate classification 'according to the terms of the headings and any relative section or chapter notes' . . . [with] terms of the HTSUS . . . construed according to their common commercial meaning." *Millennium Lumber Dist. Ltd. v. United States*, 558 F.3d 1326, 1328–29 (Fed. Cir. 2009) (citations omitted).

The issue in this case is whether the Netwraps are properly classified under HTSUS heading 6005 as a "warp knit fabric" or under HTSUS heading 8433 as "parts"

of "harvesting or threshing machinery, including straw or fodder balers," or, alternatively, under HTSUS heading 8436 as "parts" of "other agricultural . . . machinery."[5]

### A. Whether the Netwraps are Classifiable as "Warp Knit Fabrics" Under HTSUS Subheading 6005.39.00

As an initial matter, the parties do not dispute that the Netwraps are covered by the plain language of HTSUS subheading 6005.39.00, *see* Def.'s Cross-Mem. at 8; Pl.'s Resp. & Reply at 2.[6] However, because the court reviews classification decisions *de novo*, the court will ascertain the scope of this subheading and whether the Netwraps are covered by this subheading. *See Bausch*, 148 F.3d at 1365.

HTSUS subheading 6005.39.00 covers, by its express terms, "warp knit fabrics (including those made on galloon knitting machines) . . . of synthetic fibers . . . other, printed." A "warp knit" is a "knit fabric produced by machine with the yarns running in a lengthwise direction."[7] *Warp Knit*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/warp%20knit (last visited October 4, 2022). While not controlling, the Explanatory Notes to HTSUS heading 6005 provide that the heading

---

[5] The court's own review found no other possible candidate headings. *See Jarvis Clark*, 733 F.2d at 874 (holding that the court has an independent obligation to determine the proper tariff classification).

[6] Although Plaintiff does not explicitly concede that the Netwraps are covered by the plain language of subheading 6005.39.00, it has raised no arguments challenging this contention and, instead, focuses its arguments on why HTSUS heading 8433 should be selected over HTSUS heading 6005.

[7] Warp knit fabrics are created through a type of knitting in which the yarns generally run lengthwise in the fabric and include "Raschel knitting." *Warp Knitting*, ILLUSTRATED DICTIONARY OF FIBER AND TEXTILE TECHNOLOGY (1st ed. 2001).

covers fabrics "made on warp knitting machines (especially Raschel machines)." Explanatory Note 60.05 at XI-6005-1.

Plaintiff's USCIT Rule 30(b)(6) witness's statements confirm that the Netwraps possess the characteristics needed to be properly classified as "warp knit fabrics." This witness confirmed that the Netwraps were knitted on Raschel machines, *see* Confid. Dep. of Stefan Kwiatkista ("Kwiatkista Dep.") 28:9–25, 29:2–4, ECF No. 32–1, and are made of chains of knit fabric running in a lengthwise direction, *see id.* 46:3–20. It is also uncontested that the Netwraps are made of synthetic fibers. Def.'s SOF ¶ 16 (stating that the Netwraps are comprised of HDPE, a synthetic material); Pl.'s Resp. to Def.'s SOF ¶ 16. Thus, the court finds that the Netwraps may be classified under HTSUS subheading 6005.39.00.[8]

[8] While HTSUS subheading 6005.39.00 also includes the term "[o]ther, printed," no discovery was conducted with respect to this issue and neither party identifies evidence that calls into question CBP's selection of the "[o]ther, printed" subheading. The marketing materials supplied with Plaintiff's motion contain various references to both roll-end markings and edge markings on the merchandise in question. *See* Ex. A to [Pl.'s Mem.] at 4, 8, 12, 14, 16, ECF No. 27-3. In the absence of any argument specific to this issue, the court considers these references sufficient to support CBP's selection of the "[o]ther, printed" subheading over the four other subheadings covering warp knit fabrics made of synthetic fibers: HTSUS 6005.35.00 (covering certain fabrics of polyethylene monofilament or of polyester multifilament); 6005.36.00 (Other, unbleached or bleached); 6005.37 (Other, dyed); and 6005.38 (Other, of yarns of different colors).

### B. Whether the Netwraps are Classifiable as "Parts" of "Harvesting or Threshing Machinery" Under HTSUS Subheading 8433.90.50

#### 1. Legal Test for Parts

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has adopted two tests for determining whether merchandise may be classified as "part" of another article. The first test is used when the merchandise in question is claimed to be a part of another article that "could not function as such article" without the claimed part. *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324 (1933); *see also Bauerhin Techs. Ltd. v. United States*, 110 F.3d 774, 778 (Fed. Cir. 1997) (explaining that an "integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article is surely a part for classification purposes").

The second test by which merchandise may qualify as a part of another article is used when the claimed part, at the time of importation, is "dedicated solely for use" in such article. *United States v. Pompeo*, 43 C.C.P.A. 9, 14 (1955). In such cases, the court must determine whether the claimed part, when applied to its intended use with that article, meets the definition of a "part" established in *Willoughby*.[9] *Id.* at 14; *see also Pomeroy Collection, Ltd. v. United States*, 35 CIT 761, 764, 783 F. Supp. 2d 1257,

---

[9] *See also Bauerhin*, 110 F.3d at 779 ("[*Willoughby* and *Pompeo*] must be read together. . . . *Willoughby* . . . does not address the situation where an imported item is dedicated solely for use with an article. *Pompeo* addresses that scenario and states that such an item can also be classified as a part.").

1260–61 (2011) (explaining the legal framework for determining whether merchandise may be classified as a part of an article).

**2. Parties' Contentions**

Plaintiff contends that the Netwraps meet the Federal Circuit's definition of parts and are thus properly classified as "parts" of harvesting machines. *See* Pl.'s Mem. at 11–17; Pl.'s Resp. & Reply at 3–9. First, Plaintiff argues that the Netwraps are dedicated to a single commercial use—baling hay. Pl.'s Mem. at 17; Pl.'s Resp. & Reply at 3. Plaintiff also argues that the Netwraps are integral to the function of a hay baler because, without the Netwraps, a hay baler could not make usable round bales, Pl.'s Mem. at 17. Furthermore, Plaintiff avers that if hay balers were "designed to make bales without the need for wrapping," it would be nonsensical that hay balers include equipment providing for the use of the Netwraps. Pl.'s Resp. & Reply at 5.

Defendant contends that the Netwraps are not integral to round baling machines because round baling machines can interchangeably use net wrap *or* twine to wrap the bales. Def.'s Cross-Mem. at 16–17. Defendant also contends that the Netwraps "cannot be an integral part of round baler machines because the mechanical function of [the balers] is to compress and roll the hay and/or silage together, and the [Netwraps] do not contribute to that function." *Id.* at 17. Instead, Defendant contends, the Netwraps "are a consumable input" akin to a spool of thread used in a sewing machine. *Id.* at 18. Defendant contends that the Netwraps are only in the round baling machines temporarily, and that the Netwraps have a primary function distinct from the round

balers—to bind crop bales *after* the bales have been removed from the round baling machine. *Id.* at 17, 21.

### 3. Analysis

Although the parties do not contest the issue, *see* Pl.'s SOF ¶ 10; Def.'s Resp. to Pl.'s SOF ¶ 10, the court must first determine whether the Netwraps are "dedicated solely for use" with the round baling machines, *see Pompeo*, 43 C.C.P.A. at 14. The record before the court indicates that the Netwraps are designed specifically for use in the balers. *See* Kwiatkista Dep. 77:4–11 (confirming that RKW does not market the Netwraps for any use other than wrapping round bales); Schmeckpeper Aff. ¶ 21, ECF No. 27-4 ("Net wrap has only one commercial use and that is to wrap hay or silage bales.").

Next, the court must determine whether the Netwraps are an "integral, constituent, or component part, without which" round hay balers "could not function." *See Pompeo*, 43 C.C.P.A. at 14; *see also Bauerhin*, 110 F.3d at 778. Prior court decisions have previously addressed whether merchandise used to bind bales of hay was considered "part" of a hay baler for the purposes of tariff classification, albeit pursuant to distinct versions of the tariff schedule.

In *Wilbur-Ellis Co. v. United States*, 26 C.C.P.A. 403 (1939), the Federal Circuit's predecessor court, the United States Court of Customs and Patents Appeals, held that bale ties were not "part" of a hay baler, finding that "the function of a hay baler is to compress hay into the form of bales and to retain it in its compressed form until the bales have been securely tied . . . and that the only function of bale ties [was] to hold

the hay in its compressed form for storage and transportation purposes."[10] *Id.* at 406. Thus, the bale ties were not "integral, constituent, or component parts of hay balers." *Id.* Similarly, in *Geo. Wm. Rueff, Inc. v. United States* ("*GWR*"), 28 Cust. Ct. 84 (1952), *aff'd United States v. Geo. Wm. Rueff, Inc.*, 41 C.C.P.A. 95 (1953), the U.S. Customs Court, the USCIT's predecessor, held that baler twine was not part of an agricultural implement because the function of the hay baler was to compress the bales, not to bind them. *Id.* at 89–90. The baler twine in question in *GWR* was inserted into the hay baler, mechanically wound lengthwise around the bale, and mechanically bound. *Id.* at 87. While both cases involved different products and earlier versions of the tariff classification system, the court finds the reasoning behind the decisions instructive.

The court finds that the Netwraps are not integral to the functioning of round hay balers. Plaintiff's designated agent confirmed that the Netwraps have their own distinct function—to maintain the shape of the bale after it has been compressed and released from the baler. Kwiatkista Dep. 98:25– 99:3. Furthermore, the Netwraps are not integral to the function of the round hay balers because these machines generally are designed to use both twine and net wrap. *See* Def.'s SOF ¶ 24; Pl.'s Resp. to Def.'s SOF ¶ 24. Thus, even without the Netwraps, round hay balers could compress crops into bale form *and* secure the bales with alternative materials. The fact that a net wrap may be the preferred method of wrapping bales is of no consequence; they are simply one of the potential inputs that round balers can use to wrap round bales.

[10] However, the *Wilbur-Ellis* court ultimately ruled that the bale ties were an agricultural implement themselves. *Wilbur-Ellis*, 26 C.C.P.A. at 409–10.

Plaintiff also seeks to rely on *Ludvig Svensson (U.S.) Inc. v. United States*, 25 CIT 573, 62 F. Supp. 2d 1171 (1999), to argue that the Netwraps are properly classified as "parts." *See* Pl.'s Mem. at 14–17; Pl.'s Reply at 4. In *Ludvig Svensson*, the court determined that screens used in the construction of greenhouses were "parts" of a greenhouse because they "were in an advanced state of manufacture, and ha[d] no other commercial uses" and the screens were an integral part of the greenhouses. 25 CIT at 581, 62 F. Supp. 2d at 1178.

The facts of *Ludvig Svensson* are readily distinguished because the Netwraps are not integral to the function of hay balers. As the *Ludvig Svensson* court noted, without the screens, the greenhouse to which they were affixed would not function for what it was designed to do—better grow crops. *See id.* at 584, 62 F. Supp. 2d at 1181 (concluding that "screens are an integral part of shade and heat retention systems because" they "permit greenhouse operators to better regulate the environment of a greenhouse, to regulate the application of chemicals and pesticides as well as irrigation, and to permit plants . . . to benefit from favorable outside weather conditions"). Round hay balers, on the other hand, are able to compact hay into round bales without the use of the Netwraps. *See* Kwiatkista Dep. 98:19–24.

Furthermore, while the screens in *Ludvig Svennson* remained affixed to the greenhouse, the Netwraps are disposable and do not remain with the hay balers after they are wrapped around the bales of hay. *See* Kwiatkista Dep. 95:21–25, 96:14–25, 97:2–14. Plaintiff's argument that the true function of a hay baler is "to produce commercially useable and saleable round hay bales," Pl.'s Resp. & Reply at 3–8; *see*

*also* Schmeckpeper Aff. ¶¶ 22–23, does not alter the court's analysis. Even accepting, *arguendo*, Plaintiff's contention that the function of a round hay baler is to "produce commercially useable and saleable round hay bales" by both compacting and wrapping the bales, the Netwraps would still not be integral to this function. Plaintiff's argument ignores the fact that, even without the Netwraps, round hay balers can produce commercially usable and saleable round bales by binding the compacted bales with twine.

Plaintiff further argues that even if round hay balers do not require Netwraps to make round bales, the Netwraps contribute to the performance of the function for which the hay baler was designed. Pl.'s Resp. & Reply at 8. In addition to *Ludvig Svensson*, Plaintiff relies on *Trans Atlantic Co. v. United States*, 48 C.C.P.A. 30 (1960), *Gallagher & Ascher Co. v. United States*, 52 C.C.P.A. 11 (1964), and *Pompeo*, 43 C.C.P.A. 14, all of which are distinguishable. Unlike the hydraulic door closers in *Trans Atlantic*, the heaters in *Gallagher*, the superchargers in *Pompeo*, or the screens in *Ludvig Svensson*, all of which were permanently affixed to the machines of which they were a part, the Netwraps do not remain affixed to round hay balers after the baling process. The Netwraps are inserted into a chamber in the baler, fed through the baler, and wrapped around the compressed crops, and then remain with the bale once it has been released from the baler—*they do not remain affixed to the balers*. *See* Kwiatkista Dep. 90:1–

91:14, 96:14–97:11. The Netwraps are thus a disposable input and not a part of round baling machines.[11]

The court also rejects Plaintiff's argument that the Netwraps are similar to the toner cartridges for photocopiers in *Mita Copystar Am. v. United States*, or the printing cartridges used in MFC machines in *Brother Int'l Corp. v. United States*, both of which were determined to be "parts" of the respective machines in which they were used. In *Mita Copystar*, the court reasoned that "the cartridges are sold with toner inside; they remain with the toner throughout its use by the photocopier; they are the standard device for providing toner to the photocopier." 160 F.3d at 712–13. Similarly, in *Brother*, the court reasoned that although the cartridges contained rolls of PET film, the cartridge was the standard device for providing the MFC machines with the PET film required to be able to print images on paper. 26 CIT at 872–73, 248 F. Supp. 2d at 1229–30.

The products in *Mita Copystar* and *Brother* were classified in accordance with the functionality of the containers—delivery systems for the toner and PET film, respectively—and not by the substances contained within. Here, however, the Netwraps are simply on rolls, placed inside a compartment located within the baler and

[11] Although, as discussed below, the toner cartridges in *Mita Copystar Am. v. United States*, 160 F.3d 710 (Fed. Cir. 1998), and printing cartridges *in Brother Int'l Corp. v. United States*, 26 CIT 867, 248 F. Supp. 2d 1224 (2002), were also disposable, they stayed with the photocopiers and multifunction center ("MFC") machines for the entirety of their usable life—the cartridges were only disposed of once they became useless. The Netwraps, on the other hand, perform their intended function—to hold the form of the bales—*after* the bales have left the baling machines.

held in place by claws or a metal bar which is otherwise attached to the machine. Def.'s SOF ¶ 14; Pl.'s Resp. to Def.'s SOF ¶ 14. Furthermore, while the toner and printing cartridges were necessary to the operation of the machines they were used in—without them the machines could not print—as discussed above, without the Netwraps, a hay baler can compress the crops and wrap the compressed bales with twine.

For these reasons, the court concludes that the Netwraps are not classifiable under HTSUS subheading 8433.90.50 as parts of harvesting machinery.

**C. Whether the Netwraps are Classifiable as "Parts" of Agricultural Machinery Under HTSUS Subheading 8436.99.00**

For the same reasons the court finds that the Netwraps are not classifiable as "parts" of harvesting machinery, the court also finds that Netwraps are not classifiable under HTSUS subheading 8436.99.00, as parts of other agricultural machinery. The Netwraps are not integral to the primary function of agricultural machinery, they do not remain affixed to such machinery, and they have their own distinct function separate from that of the machinery in which they are used.

## CONCLUSION

For the foregoing reasons, the court holds that CBP properly classified the Netwraps under HTSUS subheading 6005.39.00. The court denies Plaintiff's motion for

summary judgment and grants Defendant's cross-motion for summary judgment.

Judgment will be entered accordingly.

/s/ Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: October 4, 2022
New York, New York