23-1210

---

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 for the 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

---

**RKW KLERKS INC.,**

*Plaintiff-Appellant*,

**v.**

**UNITED STATES,**

*Defendant-Appellee.*

---

**Appeal from the United States Court of International Trade in Case No. 20-00001, Chief Judge Mark A. Barnett**

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT
RKW KLERKS INC.**

**Philip Yale Simons**
**Jerry P. Wiskin**

**SIMONS & WISKIN**
**98 Craig Road**
**Manalapan, NY, NJ 07726**
**Tel (732) 316-2300**

**Patrick C. Reed**

**SIMONS & WISKIN**
**45 Broadway, Suite 2110**
**New York, NY 10006**
**Tel:   (212) 669-0600**

*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF INTEREST

**1. Represented Entity:**              RKW Klerks Inc.

**2. Real Party in Interest:**          Same**.**

**3. Publicly Traded Parent Company:**   No.

**4. Legal Representatives in this Court and Lower Court:**

      **Law Firm:** Simons & Wiskin

      **Attorneys:** Philip Yale Simons, Jerry P. Wiskin, Patrick C. Reed

**5. Related Cases:**              None.

**6. Organizational Victims ands Bankruptcy Cases:** None.

## TABLE OF CONTENTS

I.   Netwrap Is A "Part" Of Baling Machines ........................ 1

    A.   Contrary To The Government's Argument, This Court's Decision In *Bauerhin* Sets Out A Disjunctive Legal Standard For A "Part" .............................................. 1

    B.   The Lower Court Properly Concluded That Netwrap Meets The *Pompeo* "Dedicated Solely For Use With" Test ............. 3

    C.   Netwrap Also Satisfies The *Willoughby* "Integral To The Function" Test .......................................... 7

    D.   *Mita Copystar* And *Brother* Are Directly Analogous To This Case ................................................... 9

    E.   *Wilbur-Ellis* And *Rueff* Are Distinguishable From This Case ..... 11

        1.   *Wilbur-Ellis* Involved Earlier Technology Of Non-Wrapping Baling Machines And *Rueff* Did Not Take Technological Changes Into Consideration ................... 11

        2.   The Government Brief Inaccurately Quotes *Wilbur-Ellis* ..... 14

        3. The Thread Thought Experiment Is Not An Element Of This Court's Tests For Parts ............................... 15

II.  Classification As A Part of Baling Machines Prevails Over Classification As Other Warp-Knit Fabric ...................... 17

    A.   Section Note 2(b) to HTSUS Section XVI Requires Parts Of Machines Classified in Section XVI To Be Classified With Those Machines And Precludes The Application Of Additional U.S. Rules Of Interpretation ..................... 17

B.    Classification As A Part of Baling Machines Prevails Over
Classification As Other Warp-Knit Fabric For The Additional
Reasons Set Out In RKW's Principal Brief .................... 20

CONCLUSION ............................................... 23

## TABLE OF AUTHORITIES

*Cases:*

*Baxter Healthcare Corp. v. United States*, 82 F.3d 1333 (Fed. Cir. 1999) . . . . . . 4

*Bauerhin Technologies L.P. v. United States*, 110 F.3d 774 (Fed. Cir. 1997) . 1,2
4-8,17

*Bell & Howell v. United States*, 19 CCPA 126, T.D. 45263 (1931) . . . . . . . . . . 8

*Brother Int'l Corp. v. United States*, 248 F. Supp. 2d 1224 (Ct. Int'l Trade
2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Decorated Metal Mfg. Co. v. United States*, 12 Ct. Cust. App. 140, TD 40061
(1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Faus Grp., Inc. v. United States*, 581 F.3d 1369 (Fed. Cir. 2009) . . . . . . . . . 21-22

*Geo. Wm. Rueff, Inc. v. United States*, 28 Cust. Ct. 84, C.D. 1392 (1952), *aff'd*,
41 CCPA 95, C.A.D. 535 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-14

*Ludvig Svensson (U.S.) Inc. v. United States*, 62 F. Supp.2d 1171 (Ct. Int'l
Trade 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*Mita Copystar Am. v. United States*, 160 F.3d 710 (Fed. Cir. 1998) . . . . 9-11,17

*Mitsubishi Int'l Corp. v. United States*, 182 F.3d 884 (Fed. Cir. 1999) . . . . . . . 19

*Rudloff v. United States*, 19 CIT 1245 (1995), *aff'd in unpublished decision*,
108 F.3d 1392 (Table) (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Stoeger v. United States*, 15 Ct. Cust. App. 291, T.D. 42472 (1927) . . . . . . . . . . 8

*United States v. Carl Zeiss, Inc.*, 24 CCPA 145, T.D. 48624 (1936) . . . . . . . . . 8

*United States v. Pompeo*, 43 CCPA 9, C.A.D. 602 (1955) . . . . . . . . . . . . . *passim*

*United States v. Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851
(1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Wilbur-Ellis Co. v. United States*, 73 Treas. Dec. 1008, 1016, T.D. 49626
(Cust. Ct. 1938), *aff'd in part & rev'd in part*, 26 CCPA 403, C.A.D. 47
(1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7,14-15

*Wilbur-Ellis Co. v. United States*, 26 CCPA 403, C.A.D. 47 (1939) . . . . . . 11-16

*Statutes:*

Harmonized Tariff Schedules of the United States (HTSUS):

General Rule of Interpretation 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

General Rule of Interpretation 3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Additional U.S. Rule of Interpretation 1(c) . . . . . . . . . . . . . . . . . . . . . 18-19

Notes 7 & 8, Section VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Heading 6005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

Subheading 6005.39.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,23

Note 2, Section XVI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-20

Heading 8433 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,21

Subheading 8533.90.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Heading 8436 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Subheading 8436.90.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Other Authorities:*

Customs Ruling HQ 752716 (1993)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Customs Ruling HQ 954768 (1994)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

# ARGUMENT

## I.     Netwrap Is A "Part" Of Baling Machines.

### A.     Contrary To The Government's Argument, This Court's Decision In *Bauerhin* Sets Out A Disjunctive Legal Standard For A "Part."

The lower court's decision was fatally inconsistent with this Court's controlling precedent on the tariff definition of a part, *Bauerhin Technologies L.P. v. United States*, 110 F.3d 774 (Fed. Cir. 1997). *Bauerhin* held that under one of the applicable legal standards, the *Pompeo* test, "an imported item dedicated solely for use with another article is a 'part' of that article within the meaning of the HTSUS." *Id.* at 779 (citing *United States v. Pompeo*, 43 CCPA 9, C.A.D. 602 (1955)). *Bauerhin* reconciled *Pompeo* with the alternative *Willoughby* test of being "integral to the function" of the article to which the imported item is to be joined. *Bauerhin*, 110 F.3d at 778-79 (citing *United States v. Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851 (1933)). But *Bauerhin* reconciled the two decisions by making the *Pompeo* and *Willoughby* tests disjunctive, rejecting the idea that the *Willoughby* test must be satisfied in all cases. *Id.* at 779 (explaining that the *Willoughby* test "is not exclusive" and "does not address the situation where an imported item is dedicated solely for use with an article" and that where an imported item satisfies the *Pompeo* test, "*Willoughby* does not apply.").

-1-

Here, the lower court did not follow *Bauerhin*. It required the imported netwrap to satisfy not only the *Pompeo* "dedicated solely for use with" test, but also the *Willoughby* "integral to the function" test. *See RKW Klerks Inc. v. United States*, 592 F. Supp.3d 1349, 1357-58 (Ct. Int'l Trade 2022), Appx12-13.

The government[1] apparently seeks to have this Court disregard *Bauerhin* and resurrect a version of the argument rejected in *Bauerhin* that an imported article must satisfy the *Willoughby* test in all cases. Specifically, the government appears to argue—just as the lower court erroneously ruled—that an imported article must satisfy both *Pompeo* and *Willoughby*. According to the government, "to classify imported merchandise as a part of another article, a court will evaluate the tests articulated in both *Pompeo* and *Willoughby Camera* based on the specific facts involved" and "the trial court did not err in evaluating whether the Netwraps are 'parts" under the test articulated in both *Pompeo* and *Willoughby Camera* ...." Gov't Br. at 30-31.

On the contrary, the Court should adhere to *Bauerhin*. Although a court should certainly consider the *Willoughby* test as well as the *Pompeo* test based on the specific facts involved, *Bauerhin* holds that an imported item meets the tariff definition of a

---

[1] This brief hereinafter refers to defendant-appellee the United States as the "government" and defendant-appellee's brief as "Gov't Br."

part if it satisfies either legal test, not both. *Bauerhin*, 110 F.3d at 779 (explaining

that where an imported item satisfies the *Pompeo* test, "*Willoughby* does not apply.").

### B.    The Lower Court Properly Concluded That Netwrap Meets The *Pompeo* "Dedicated Solely For Use With" Test.

Here, the lower court concluded that RKW's netwrap satisfies the *Pompeo* test,

ruling that "the record before the court indicates that the Netwraps are designed

specifically for use in the balers." *RKW, supra,* 529 F. Supp.3d at 1358, Appx14.

This conclusion was entirely correct. As the lower court noted, the uncontroverted

evidence of record reflects that "RKW does not market the Netwraps for any use

other than wrapping round bales," *id.* (citing Appx212), and that "'Net wrap has only

one commercial use and that is to wrap hay or silage bales.'" *Id.* (citing Appx56).

The lower court also noted that "the parties do not contest the issue [of the "dedicated

solely for use with" test]." 529 F. Supp.3d at 1358, Appx14.

This Court should sustain the lower court's uncontested conclusion that

netwrap on its cardboard core satisfies the *Pompeo* "dedicated solely for use with"

test. And since the *Pompeo* and *Willoughby* tests are disjunctive, the Court should

hold that netwrap on its cardboard core is a "part" for tariff purposes.

On appeal, the government still does not contest the lower court's conclusion

that netwrap satisfies the "dedicated solely for use with" test. But it appears to argue

that somehow netwrap does not meet the tariff definition of a part, apparently because it claims that "the Netwraps are 'a separate and distinct commercial entity' from round balers ...." Gov't Br. at 31 (citing *Bauerhin* and *Willoughby*, but not *Pompeo*); *see also* Gov't Br. at 30 (citing *Baxter Healthcare Corp. v. United States*, 82 F.3d 1333 (Fed. Cir. 1999), for the same legal principle).

Contrary to the government's argument, *Bauerhin* explains that not being a separate and distinct commercial entity is a subsidiary element of the *Pompeo* "dedicated solely for use with" test (*Bauerhin*, *supra*, 110 F.3d at 779)—the test that the lower court here found to be satisfied. Specifically, *Bauerhin* explains that an imported item is a separate and distinct commercial entity if it is designed or sold to be used independently. *Id.* The tripod in *Willoughby* was a separate and distinct commercial entity because it was not used solely with cameras, but also for various other purposes, and the tripod performed a separate function of supporting something without loss of its essential characteristics when used independently of the camera. *Id.* at 778 (discussing *Willoughby*); *see also Willoughby, supra*, 21 CCPA at 324 (suggesting other supportive articles such as piano benches and typewriter desks are not parts of pianos and typewriters).

In contrast, the *Bauerhin* Court's analysis of the imported canopies explained that:

The facts in *Willoughby Camera* are considerably different from those presented here in which the article at issue, the canopy, serves no function or purpose that is independent of the child safety seat. It is undisputedly designed, marketed, and sold to be attached to the child safety seats. ....

... [W]e conclude that where, as here, an imported item is dedicated solely for use with another article and is not a separate and distinct commercial entity, *Pompeo* is closer precedent, and *Willoughby* does not apply. [citations omitted]. ... The canopies in this case are dedicated solely for use with the child safety seats. They are neither designed nor sold to be used independently. Therefore, the canopies are properly considered parts under the HTSUS.

110 F.3d at 779.

Here, RKW's netwrap fully satisfies the Court's analysis of the canopies in *Bauerhin*. As the lower court here properly found, netwrap has no other purpose, function, or commercial use except for being inserted into and used with baling machines to wrap bales of hay. *RKW, supra*, 529 F. Supp.3d at 1358, Appx14. Similarly, the undisputed facts reflect that the netwrap in issue has only a single use—to wrap bales of hay produced in an automatic-wrapping baling machine—and is not used for any other purpose. Appx52. The netwrap is "designed, marketed, and sold" (*Bauerhin*) solely to be inserted in automatic-wrapping baling machines so that "the machine can wrap the bales with net wrap." Appx46. Thus, netwrap is not "used

independently" (*Bauerhin*) of a baling machine.   And since the function of the automatic-wrapping baling machine is to produce bales wrapped with netwrap to hold the bales' shape after being released from the baling machine, netwrap's function is not "independent of" (*Bauerhin*) the baling machine.

The government's argument, in contrast, appears to be that netwrap's function of holding the shape of bales after they are released from the baling maching is somehow independent of the baling machine's function of producing bales that hold their shape after they are released from the baling machine.   On the contrary, the baling machine and netwrap jointly perform the same function of producing bales wrapped with netwrap to hold their shape. *Cf. Ludvig Svensson (U.S.) Inc. v. United States*, 62 F. Supp.2d 1171, 1178 (Ct. Int'l Trade 1999) (finding that the imported greenhouse screens contribute to the functions of the greenhouse's shade and heat retention systems and of the greenhouses themselves).

The government also argues that netwrap is a separate and distinct commercial entity because RWK does not manufacture baling machines and baling machine manufacturers do not manufacture netwrap.   This argument was rejected in the *Wilbur-Ellis* case (on which the government relies heavily; *see infra* Point I(E)), where the court held that "an article in order to be a part of a machine need not necessarily be made by the same manufacturer." *Wilbur-Ellis Co. v. United States*,

73 Treas. Dec. 1008, 1016, T.D. 49626 (Cust. Ct. 1938), *aff'd in part & rev'd in part on other grounds*, 26 CCPA 403 (1939); *accord*, *Decorated Metal Mfg. Co. v. United States*, 12 Ct. Cust. App. 140, TD 40061 (1924) (holding that typewriter ribbon spools are parts even though they are made by companies that do not make the typewriters) (cited in *Wilbur-Ellis*, 73 Treas. Dec. at 1016).

In sum, therefore, netwrap satisfies the *Pompeo* "dedicated solely for use with" test, including not being a separate and distinct commercial entity under *Bauerhin* and similar cases.

### C.    Netwrap Also Satisfies The *Willoughby* "Integral To The Function" Test.

The majority of the government's "parts" argument appears to advocate that netwrap does not satisfy the *Willoughby* test of being integral to the function of hay baling machines.  It is unnecessary for the Court to address this argument.  As discussed above, the *Willoughby* "integral to the function" test and *Pompeo* "dedicated solely for use with" tests are disjunctive, not conjunctive, and the netwrap satisfies the *Pompeo* test.  While the government tries to focus on the function of the baling machine and whether net wrap is integral to that function (Gov't Br. at 22-26), *Bauerhin* explained that *Pompeo* "looked to the nature and function of the *imported item*, the supercharger, to determine whether the item was a part of an automobile."

-7-

*Bauerhin*, *supra*, 110 F.3d at 778.  Under the *Pompeo* "dedicated solely for use with" test as affirmed in *Bauerhin*, it is irrelevant whether the machine in which the part is used can function without the part.

Nevertheless, as RKW's principal brief demonstrates (RKW Br. at 14-16), netwrap does indeed satisfy the *Willoughby* test.  According to the the government, netwrap "[is] not integral to the function of round balers because some round balers can interchangeably use net wrap *or* twine to wrap the bales." Gov't Br. at 25.  This argument against alternative interchangeable parts contradicts the standard in *Willoughby*.  Under *Willoughby*, the "integral to the function" test evaluates whether, without the imported item (netwrap), the articles to which it is to be joined (baling machines) "could not perform *one* of their proper functions ...." *Willoughby*, 21 CCPA at 327 (italics added)  (discussing *Bell & Howell v. United States*, 19 CCPA 126, T.D. 45263 (1931), in which the cameras to which the imported lens filter adaptors were attached could not perform one of their functions, taking color pictures, without the lens filter adaptors, but could still perform another function, taking black-and-white pictures);  *accord, United States v. Carl Zeiss, Inc.*, 24 CCPA 145, T.D. 48624 (1936) (interchangeable viewfinders are parts of a camera); *Stoeger v. United States*, 15 Ct. Cust. App. 291, T.D. 42472 (1927) (interchangeable cartridge magazines are parts of a pistol).

Here, analogously, without netwrap, automatic-wrapping baling machines cannot perform their function of wrapping hay bales with netwrap, even though they could perform the function of wrapping them with twine. Equally important, netwrap is integral to a function of baling machines because wrapping hay bales is one of the functions that an automatic-wrapping baling machine performs. *See* Appx46 ("the [baling] machine can wrap the bales with net wrap.").

The dictionary definitions of "part" cited in the government's brief (Gov't Br. at 21 & 26) appear merely to reiterate the *Willoughby* "integral to the function" test and therefore have no independent legal merit.

### D.   *Mita Copystar* and *Brother* Are Directly Analogous To RKW's Case.

The government offers no persuasive argument to distinguish *Mita Copystar Am. v. United States*, 160 F.3d 710 (Fed. Cir. 1998), and *Brother Int'l Corp. v. United States*, 248 F. Supp. 2d 1224 (Ct. Int'l Tr. 2002) (discussed in Gov't Br. at 36-38). The government misses the mark by arguing "[f]irst and foremost" that "in neither case was there a specific HTSUS heading that described the merchandise in question, as heading 6005, HTSUS, does here." Gov't Br. at 36. This argument conflates the issue of whether a competing HTSUS provision describes the netwrap with the

separate issue of whether netwrap meets the tariff definition of a part.  The competing

classification has no bearing on whether netwrap is a part.

The government also repeats its mistaken argument that the same company

does not manufacture the baling machines and netwrap.  Gov't Br. at 36 (discussing

*Brother*); *see supra* Point I(B) (rebutting this argument).

Equally meritless is the government's argument that *Mita Copystar* and

*Brother* are distinguishable because the toner and PET film in those cases were inside

the toner or printing cartridge, whereas the netwrap is wound onto its cardboard core.

*See* Gov't Br. at 37-38.  On the contrary, whether a substance (toner, PET film, or

netwrap) is located inside or outside the thing that holds it (toner or printing cartridge

versus cardboard core) has no bearing on whether the substance inside or outside the

thing that holds it is integral to the function of the machine in which it is used.  Just

as the cartridge containing toner is inserted into the photocopier for use, netwrap on

its cardboard core is inserted into the baling machine.  Appx44, Appx214-216

(Kwiatkista Dep. 85-88,90).  The netwrap to be wrapped around the hay is analogous

to the toner in the cartridge in *Mita Copystar* to be imprinted on the paper by the

photocopier.  As explained in RKW's principal brief (RKW Br. at 22), the toner

continues to perform its function of producing an image on paper after the toner has

left the photocopier, just as netwrap continues to perform its function of holding hay

-10-

bales after they are released. Thus, contrary to the government's argument, the netwrap is analogous to the toner, not the paper, and the paper is analogous to the hay. *See Mita Copystar*, *supra*, 610 F.3d at 713 ("Unlike typewriter paper, copier paper, or photographic film, toner is not ordinarily regarded as the material upon which the photocopy machine operates").

*Mita Copystar* gives a further illustration of the flaw in the government's argument that "[t]he fact that some round balers can secure hay bales using twine or Netwraps is an indication that neither twine nor Netwraps are integral to the function of the round balers." Gov't Br. at 25. Under the government's theory, if a photocopier can make either black-and-white or color copies, neither a black-and-white toner cartridge nor a color toner cartridge would be integral to the function of the photocopier. On the contrary, printing in either color or black-and-white is a function of photocopiers, just as wrapping hay bales with either netwrap or twine (both being a wrapping material) is a function of automatic-wrapping hay balers. *See also supra* Point C.

**E.  *Wilbur-Ellis* And *Rueff* Are Distinguishable From This Case.**

**1.  *Wilbur-Ellis* Involved Earlier Technology Of Non-Wrapping Baling Machines And *Rueff* Did Not Take Technological Changes Into Consideration.**

The government relies heavily on *Wilbur-Ellis Co. v. United States*, *supra*, and the Customs Court's decision in *Geo. Wm. Rueff, Inc. v. United States*, 28 Cust. Ct. 84, C.D. 1392 (1952) (following *Wilbur-Ellis* on "parts" issue with respect to baling twine instead of bale ties), *aff'd on other grounds*, 41 CCPA 95, C.A.D. 535 (1953) (no appeal of "parts" issue).  Gov't Br. *passim*.

The critical factual difference between *Wilbur-Ellis* and netwrap is technological change.  The baling machines described in *Wilbur-Ellis* were not automatic-wrapping baling machines and did not, themselves, attach the bale ties to the hay bales.  *See* RKW Br. at 16-18 (discussing the factual distinctions between *Wilbur-Ellis* and this case).  The lower court in *Wilbur-Ellis* reconfirmed this point by stating that "as a matter of fact they [the bales ties] are ... not attached to the machine" and "are tied by hand ...." *Wilbur-Ellis*, *supra*, 73 Treas. Dec. at 1016.  In contrast, it is undisputed here that modern automatic-wrapping baling machines automatically wrap netwrap around the hay bales.  Modern baling machines perform a function (wrapping the bales) that earlier non-wrapping machines did not perform, and using a wrapping material such as netwrap is integral to that function.

The court in *Pompeo* emphasized that advances in technology need to be taken into account in deciding whether an item is a part:

> The [lower] court properly took judicial notice of the fact that numerous innovations have come into use in the automotive field in recent years, such as power steering, automatic transmissions, and power brakes, and felt that each improvement has created what is undoubtedly a new "part" of an automobile, even though not all cars are equipped with such innovations. The court inclined to the view that construing the *Willoughby* case as suggested by the Government would mean that the items covered by the word "parts" would not keep pace with the advancement in the automotive industry.

*Pompeo*, *supra*, 43 CCPA at 12.   In short, the conclusion that hand-tied bale ties were not parts of non-wrapping baling machines at the time of *Wilbur-Ellis* does not at all support the conclusion that netwrap on the cardboard core is not a part of modern baling machines that wrap bales automatically.   Since netwrap is essential to the automatic-wrapping baling machine's function of wrapping bales with netwrap, netwrap on its cardboard core is a part of the machine.

As for *Rueff*, although the baling twine in the case was used on automatic baling machines that would wrap the twine around the bales, the plaintiff (whose "parts" claim was an alternative claim, not its primary claim) apparently did not offer any argument that the technological change from non-wrapping to automatic-wrapping machines would affect the analysis.   Rather than rejecting the technological change argument, the Customs Court did not consider it.   In fact, the language cited

-13-

in the government's brief (Gov't Br. at 23, starting with "the function of a hay baler is to compress hay into the form of bales ....") was the Customs Court's quotation from the CCPA's opinion in *Wilbur-Ellis* about non-wrapping baling machines, not a description of automatic-wrapping baling machines. *See Rueff*, 28 Cust. Ct. at 90 (prefacing, in relevant part, the quotation in the government brief with "our appellate court in C.A.D. 47 ... affirmed our conclusion that bale ties were not parts of agricultural implements, stating") (citing *Wilbur-Ellis*, *supra*, 26 CCPA at 406).

**2.    The Government Brief Inaccurately Quotes *Wilbur-Ellis*.**    The government's argument rests heavily on a hypothetical example—a thought experiment—in *Wilbur-Ellis* that suggested, in relevant part, that "'thread is [not] a part of a sewing machine'" because it "'merely passes through the machine [in the process of sewing a garment] and becomes a part of the machine's product[.]'" Gov't Br. at 23. The government's brief incorrectly attributes the thread thought experiment to the CCPA. Gov't Br. at 23 (stating that the CCPA "noted that" thread is not a part and citing 26 CCPA at 406). In fact, it was the Customs Court (the lower court) in *Wilbur-Ellis* that posited the thought experiment and the CCPA was quoting the lower court's opinion. *See Wilbur-Ellis*, 26 CCPA at 406 (stating before quoting the thread

-14-

thought experiment that "the trial court ... said")[2]; *Wilbur-Ellis, supra,* 73 Treas. Dec. at 1018 (stating the thought experiment and the other language quoted by the CCPA on appeal).

The incorrect attribution is significant because the CCPA's opinion in *Wilbur-Ellis* gives no indication that the CCPA endorsed the lower court's thread thought experiment.  On the contrary, the thought experiment appears in the part of the Customs Court's opinion which held that the imported bales ties were not agricultural implements—the issue on which the CCPA reversed the Customs Court.  *See Wilbur-Ellis*, 26 CCPA at 406 (stating before quoting the thread exaple that "[i]t is further contented that ... bales ties are agricultural implements" and "[r]elative to that issue, the trial court ... said") & 407-410 (reversing the Customs Court on the "implements" claim); 73 Treas. Dec. at 1015-1017 (discussing the "parts" claim) & 1017-1018 (discussing the "implements" claim, including positing the thread example in support of its "implements" ruling).

**3.  The Thread Thought Experiment Its Not An Element Of This Court's Tests For Parts.**  Regardless of the correct source of the thread thought experiment,

---

[2]   The correct source of the thread example is not readily visible in the electronic version of *Wilbur-Ellis* available on Westlaw, instead of the original official CCPA report where it is clearly visible (indented block quotation in smaller font).

it does not prevent netwrap from being classified as a part for tariff purposes in accordance with this Court's precedents.

First, *Wilbur-Ellis* with its thought experiment was decided long before *Pompeo* created the "dedicated solely for use with" test for parts. Unlike RKW's netwrap, which satisfies the *Pompeo* test, thread seemingly does not satisfy the *Pompeo* requirement of being "dedicated solely for use with" sewing machines, since thread is also used for sewing by hand. Thus, at least under the *Pompeo* test, the thread thought experiment might be correct that thread is not a part of a sewing machine, but for a reason completely different from the fact that thread is attached to the garment being made on the sewing machine.

Second, *Wilbur-Ellis* does not take technological change into consideration. There, the Customs Court there was comparing sewing machine thread to the twine used for baling hay that was applied outside of the baling machine after the bale was formed. Thus, this Court should give it no weight.

Even more important, as discussed in Subpoint 2 above, this Court has never endorsed the *Wilbur-Ellis* thread thought experiment. Instead, as this Court has articulated the *Pompeo* "dedicated solely for use with" test and the *Willoughby* "integral to the function" test, those tests do not include a limitation that a part of a machine cannot be the holder or container of a substance that the machine attaches

to the material the machine processes. On the contrary, *Mita Copystar* held that a cartridge containing toner is a part of a photocopier, even though the cartridge holds a substance (toner) that the photocopier prints on the paper being processed. Analogously, the cardboard core on which netwrap is wound holds a substance (netwrap) that the baling machine attaches to the hay being processed. The Court should adhere to its precedents in *Pompeo*, *Willoughby*, *Bauerhin*, and *Mita Copystar*. It should not redefine or modify its existing legal standard for a part by introducing a new unprecedented element into that standard.

## II. Classification As A Part of Baling Machines Prevails Over Classification As Other Warp-Knit Fabric.

### A. Section Note 2(b) To HTSUS Section XVI Requires Parts Of Machines Classified in Section XVI To Be Classified With Those Machines And Precludes The Application Of Additional U.S. Rules Of Interpretation.

For the reasons stated in Point I above as well as RKW's principal brief, netwrap satisfies the tariff definition of a part of a baling machine. A baling machine is classified in HTSUS chapter 84 (probably heading 8433, but in the alternative heading 8436). Under the circumstances, section note 2(b) to HTSUS Section XVI (chapters 84 and 85) requires netwrap to be classified in the same heading as the baling machine.

-17-

Section Note 2 to HTSUS Section XVI provides in relevant part that:

2. ... [P]arts of machines ... are to be classified according to the following rules:
    (a) Parts which are goods included in any of the headings of chapter 84 or 85 (other than [certain headings not applicable here]) are in all cases to be classified in their respective headings;
    (b) Other parts, if suitable for use solely or principally with a particular kind of machine, ... are to be classified with the machines of that kind or in [certain headings not applicable here] as appropriate. ....
    (c) [not applicable here].

Here, note 2(a) does not apply because the competing heading is in chapter 60, not chapter 84 or 85. Therefore, the netwrap is "[o]ther parts" under note 2(b), and that note mandates that netwrap is to be classified with the machines of which the netwrap is a part.

The government opposes this conclusion by arguing that section note 2(b) does not preclude application of Additional U.S. Rule of Interpretation 1(c) ("AUSRI 1(c)"). AUSRI 1(c) provides that *"[i]n the absence of special language or context which otherwise requires*, ... (c) a provision for parts of an article covers products solely or principally used as a part of such articles but a provision for 'parts' ... shall not prevail over a specific provision for such part or accessory" (italics added). According to the government, section note 2(b) "is not "special language" that trumps the application of Rule 1(c)." Gov't Brief at 42 (citing no legal authority).

2(b), or not 2(b), that is the question.  Contrary to the government's argument, this Court has held that section note 2(a) to Section XVI provides "'special language or context' that renders Rule of Interpretation 1(c) inapplicable to the extent that they conflict." *Mitsubishi Int'l Corp. v. United States*, 182 F.3d 884, 886 (Fed. Cir. 1999). Although *Mitsubishi* involved note 2(a), while RKW's case involves note 2(b), there is no basis for treating note 2(b) differently from note 2(a). Court should adhere to *Mitsubishi* and apply the same reasoning here.

*Accord, Rudloff v. United States*, 19 CIT 1245, 1248 (1995) (holding that a chapter note to chapter 95 under which parts of articles classified in chapter 95 are to be classified with such articles "provides special language or context which precludes application of the Additional U.S. Rules of Interpretation ...."),  *aff'd in unpublished decision*, 108 F.3d 1392 (Table) (Fed. Cir. 1997); *see also Mita Copystar Am. v. United States*, *supra*, 160 F.3d at 714 (holding that note 2(b) to chapter 90 applies, without considering AUSRI 1(c)); *Brother Int'l Corp. v. United States*, *supra*, 248 F. Supp.2d at 1233-34 (holding that section note 2(b) to section XVI applies, without considering AUSRI 1(c)); Customs Ruling HQ 954768 (1994) (ruling that AUSRI 1(c) does not apply "because section XVI, note 2(b), HTSUS is the 'special language or context which otherwise requires.'"); Customs Ruling HQ

752716 (1993) (Chapter Note 3 to Chapter 95 is "the 'special language or context' contemplated by [AUSRI 1(c)]").

### B.    Classification As A Part Of Baling Machines Prevails Over Classification As Other Warp-Knit Fabric For The Additional Reasons Set Out In RKW's Principal Brief.

The majority of the government's arguments that classification as other warp-knit fabric should prevail over parts of baling machines focus on issues other than section note 2(b) to HTSUS Section XVI.  *See* Gov't Br. at 39-40 & 44-48.  The Court does not need to address these issues if it concludes, as RKW urges, that section note 2(b) is dispositive.

RKW respectfully relies on its principal brief on these issues.  As explained there, the government's classification as warp-knit fabric in heading 6005 is inconsistent with section notes 7 and 8 to HTSUS Section VI (covering textiles and textile articles).  Under these section notes, a finished textile article that is ready for use, such as netwrap, is a "made-up" article that is not classifiable in chapter 60.

Furthermore, if the Court reaches AUSRI 1(c), the netwrap remains classifiable as a part because subheading 6005.39.00 in which the netwrap was classified is a basket provision.  *See* RKW Br. at 28-29.

If the choice between the competing classifications is determined under the applicable section and chapter notes, HTSUS General Rule of Interpretation 1 ("GRI 1") (providing in relevant part that "classification shall be determined according to the terms of the headings and any relative section or chapter notes ....") governs this case. But if the Court cannot decide the matter under GRI 1, it should turn to GRI 3, which applies when "goods are, prima facie, classifiable under two or more headings." Here, prima facie ("on first view") both headings 6005 and 8433 describe the netwrap in issue. Heading 6005 provides for "Warp knit fabrics (including those made on galloon knitting machines), other than those of headings 6001 to 6004," whereas Heading 8433 provides for "Harvesting or threshing machinery, including straw or fodder balers;... parts thereof." GRI 3(a) provides in this situation that:

> (a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

HTSUS GRI 3(a).

Between heading 8433 and heading 6005 it is manifestly obvious that Heading 8433 provides a more specific description of the netwrap. The warp-knit fabrics

described by Heading 6005 can have a variety of uses whereas the goods in issue have only a single application, i.e., as a part of machines of Heading 8433. Without question, heading 8433 covers a narrower scope of products than Heading 6005. *See Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1374 (Fed. Cir. 2009) (ruling that the "heading [that] is more difficult to satisfy . . . [is] more specific" and holding that a heading that "covers only processed products" "encompasses a narrower range of items and uses" than a heading that "covers a large variety of processed and unprocessed fiberboard products.").

## CONCLUSION

For all the foregoing reasons and the reasons set out in its principal brief, Plaintiff-Appellant RKW Klerks Inc. respectfully requests the Court to reverse the judgment of the U.S. Court of International Trade and hold that the imported netwrap that was classified on liquidation under the basket provision subheading 6005.39.00, HTSUS, is properly classified as parts of hay balers under subheading 8433.90.50, HTSUS, or, in the alternative, under subheading 8436.90.00 as parts of agricultural machinery. In the further alternative, Plaintiff-Appellant requests the Court to vacate the lower court's judgment and remand the case for further proceedings consistent with this Court's decision.

Respectively submitted,
SIMONS & WISKIN
*Attorneys for RKW Klerks Inc.*


By: /s/ *Philip Yale Simons*

Philip Yale Simons
Jerry P. Wiskin
Patrick C. Reed

May 7, 2023

-23-

**CERTIFICATE OF COMPLIANCE
WITH WORD LIMITATION
IN FEDERAL CIRCUIT RULE 32(b)**

I, Philip Yale Simons, attorney for Plaintiff-Appellant, RKW Klerks Inc.,

relying upon the word count function of the Word-Perfect word processing program

used to prepare the Reply Brief of Appellant RKW Klerks Inc., certify that this brief

complies with the word limitation in Federal Circuit Rule 32(b)(1) and that it contains

5615 words (including words not included in the word limitation).

/s/ *Philip Yale Simons*
Philip Yale Simons

# CERTIFICATE OF SERVICE

I, Jerry P. Wiskin, hereby state that I am a member of the Firm of SIMONS & WISKIN, attorneys for RKW Klerks, Inc. I hereby certify that, on May 7, 2023, I filed a copy of the foregoing Plaintiff-Appellant RKW Klerks Inc.'s ("RKW") Reply Brief in Appeal No. 23-1210 electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  Further, a copy of RKW's Reply Brief was sent to Elisa S. Solomon, Esq., counsel for the United States, Defendant-Appellee via e-mail.

/s/ Jerry P. Wiskin
Jerry P. Wiskin