# United States Court of Appeals for the Federal Circuit

---

**RKW KLERKS INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1210

---

Appeal from the United States Court of International Trade in No. 1:20-cv-00001-MAB, Chief Judge Mark A. Barnett.

---

Decided: March 7, 2024

---

PATRICK CRAIG REED, Simons & Wiskin, New York, NY, argued for plaintiff-appellant. Also represented by PHILIP YALE SIMONS, JERRY P. WISKIN, Manalapan, NJ.

LUKE MATHERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, AIMEE LEE, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; FARIHA KABIR, Office of Assistant Chief Counsel, Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

---

Before TARANTO, CHEN, and CUNNINGHAM, *Circuit Judges*.

CHEN, *Circuit Judge*.

RKW Klerks Inc. (RKW) appeals the determination of the United States Court of International Trade (CIT) that the United States Customs and Border Protection (Customs) correctly classified RKW's net wrap products in the Harmonized Tariff Schedule of the United States (HTSUS). *RKW Klerks Inc. v. United States*, 592 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) (*CIT Decision*). Because the CIT did not err in determining that RKW's net wraps are not a part of harvesting or other agricultural machinery, we *affirm*.

## BACKGROUND

RKW imports two types of net wrap, marketed as "Top Net" and "Rondotex" (collectively, Netwraps). The Netwraps are synthetic fabrics used to wrap round bales of harvested crops released from baling machines such that the bales maintain their compressed structure and are easier to transport. The Netwraps are made up of high-density polyethylene (HDPE) film layers that have been knit on a Raschel machine and wrapped around a cardboard core.

RKW is a subsidiary of RKW SE, a film producer that manufactures materials such as shrink bottle wrap, pallet stretch hoods, gardening and greenhouse films, trash bags, and other packaging solutions. Neither RKW SE nor any of its subsidiaries produce or sell any harvesting or agricultural machinery.

At issue in this case is the proper classification of the Netwraps in the HTSUS. Customs classified the Netwraps under HTSUS Chapter 60 under subheading 6005.39.00 as "warp knit fabric," dutiable at the rate of 10% *ad valorem*. The relevant portions of this chapter, which covers "knitted or crocheted fabrics," recite:

> Chapter 60. Knitted or Crocheted Fabrics
>
> 6005: Warp knit fabrics (including those made on galloon knitting machines), other than those of headings 6001 and 6004:
>
> 6005.39 Of synthetic fibers:
>
> 6005.39.00 Other, printed

After Customs's initial classification, RKW filed a protest, which was deemed denied. RKW then appealed to the CIT, filing a motion for summary judgment. The government filed a cross-motion for summary judgment. In its motion, RKW contended that the Netwraps should instead be classified under Chapter 84, subheading 8433.90.50 as "parts" of harvesting machinery or alternatively subheading 8436.99.00 as "parts" of other agricultural machinery. The relevant portions of this chapter, which covers "nuclear reactors, boilers, machinery and mechanical appliances; parts thereof," recite:

> Chapter 84. Nuclear Reactors, Boilers, Machinery and Mechanical Appliances; Parts Thereof
>
> 8433: Harvesting or threshing machinery, including straw or fodder balers; grass or hay mowers; machines for cleaning, sorting or grading eggs, fruit or other agricultural produce, other than machinery of heading 8437; parts thereof:
>
> 8433.90 Parts
>
> 8433.90.50 Other
>
> 8436: Other agricultural, horticultural, forestry, poultry-keeping or bee-keeping machinery, including germination plant fitted with mechanical or thermal equipment; poultry incubators and brooders; parts thereof:
>
> 8436.99 Parts

8436.99.00 Other

The CIT held that the Netwraps are not classifiable as parts of harvesting machinery or as parts of other agricultural machinery and that Customs correctly classified the Netwraps under 6005.39.00. The CIT thus denied RKW's motion for summary judgment and granted the government's cross-motion for summary judgment. RKW appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the CIT's grant of summary judgment as a matter of law, deciding de novo the interpretation of tariff provisions as well as whether there are genuine disputes of material fact. *Millenium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009). "If we determine that there is no dispute of material facts, our review of the classification of the goods collapses into a determination of the proper meaning and scope of the HTSUS terms that, as a matter of statutory construction, is a question of law." *Aves. In Leather, Inc. v. United States*, 317 F.3d 1399, 1402 (Fed. Cir. 2003). Here, the nature and use of the Netwraps are not in dispute and "the resolution of this appeal turns on the determination of the proper scope of the relevant classifications." *Bauerhin Techs. Ltd. P'ship v. United States*, 110 F.3d 774, 776 (Fed. Cir. 1997).

The HTSUS contains General Rules of Interpretation (GRIs) that govern the classification of merchandise. GRI 1 provides, "classification shall be determined according to the terms of the headings and any relative section or chapter notes." When applying GRI 1, "[a] court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (quoting *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998)).

The question before us is whether the Netwraps can be classified under heading 8433 or 8436 as "parts" of a machine, and if so, whether this classification should prevail over an alternative classification under heading 6005 as a warp knit fabric.[1]

There are multiple ways in which an imported item can be considered a "part" of another article. The determination is specific to the particular facts presented in each case. *See Bauerhin*, 110 F.3d at 779. We have held that if an item is "dedicated solely for use with another article and is not a separate and distinct commercial entity," *id.*, or is an "integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article," *id.* (quoting *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324 (1933)), then the item is a part. *Id.* The Netwraps do not meet either scenario.

I

RKW contends that the Netwraps are dedicated solely for use with baling machines, and therefore they are a part of those machines. Appellant's Br. 12–13. We disagree. As our predecessor court has made clear, "the question of whether the article is a part must be determined from the nature of the article as it is applied to that use." *United States v. Pompeo*, 43 C.C.P.A. 9, 14 (1955). When an item

[1] Although RKW also disputes whether the Netwraps can be properly classified under heading 6005, this argument was not raised to the CIT. *See CIT Decision*, 592 F. Supp. 3d at 1356–57. We therefore decline to address the argument on appeal. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("[A] position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances.").

is dedicated solely for use with another article such that the item has no independent function or purpose except to operate in conjunction with the larger article, that item is a "part." *See Bauerhin*, 110 F.3d at 779. Our predecessor court held in *Pompeo* that a supercharger, which is a device used to increase the power of an automobile engine, was a part of an automobile because it was "dedicated solely for use upon automobiles." 43 C.C.P.A. at 14. Likewise, in *Bauerhin*, we held that a canopy for child car seats was a part of the seat because it was dedicated solely for use with the seats. 110 F.3d at 779. In both of these instances, the items at issue were considered parts because they could not serve a function apart from being a component of the larger article.

This is unlike the relationship between the Netwraps and baling machines, at least because Netwraps have additional function outside of the machine. While the record may reflect that "Netwraps are designed specifically for use in the balers," we agree with the CIT that the Netwraps are being used *by* baling machines as inputs and exit baling machines as part of products—wrapped hay bales—that serve a function outside of and independent from the machine. *CIT Decision*, 592 F. Supp. 3d at 1358–60. The CIT reasoned that the Netwraps are "inserted into a chamber in the baler, fed through the baler, and wrapped around the compressed crops, and then remain with the bale once it has been released from the baler—*they do not remain affixed to the balers*. The Netwraps are thus a disposable input and not a part of round baling machines." *Id.* at 1360 (citation omitted). It does not follow that because the Netwraps are *used as inputs* to baling machines, they necessarily are "dedicated solely for use" with and are a part of the baling machines. In fact, as RKW confirmed, the Netwraps serve their key function—maintaining the shape of the compressed hay bale—outside of the machine, rather than when they are being used by the machine. *Id.* at 1359; J.A. 218.

When an item is consumable—like bullets in a gun, staples in a stapler, or film in a camera—although the consumable is used by a particular machine, the consumable is not dedicated solely for use with the machine (and thus a machine part) simply because it is used exclusively by the machine. In *United States v. American Express Company*, our predecessor court explained that film is not a part of a camera in part because "the function of a camera is to convert an unexposed sensitized film into an exposed film. The exposed film is, therefore, a *product* of the camera, not an integral part of such camera." 29 C.C.P.A. 87, 93 (1941) (emphasis added). Here, the output product of the baling machine is the Netwrap packaged around a hay bale, and the Netwrap is never a part of the baling machine.

RKW analogizes the Netwraps to the products at issue in *National Carloading Corporation v. United States*, 53 C.C.P.A. 57 (1966), and *Mita Copystar America v. United States*, 160 F.3d 710 (Fed. Cir. 1998). However, both of these cases are distinguishable.

In *National Carloading*, our predecessor court held that spark plugs were not classifiable as parts of automobiles. 53 C.C.P.A. at 59, 61. There, the court relied in part on a holding in *Lodge Spark Plug Co v. United States*, 44 Cust. Ct. 448 (1960), that spark plugs were instead classified as a part of an internal combustion engine. RKW relies on *National Carloading*'s discussion of *Lodge Spark Plug* to argue the spark plugs were consumed in their use and needed to be replaced and yet were still considered a part of a combustion engine. Appellant's Br. 21. However, the spark plugs at issue in *Lodge Spark Plug* were not inputs into the combustion engine and did not exit as a functional output each time the engine was run. Unlike the spark plugs, which operated alongside an engine for the entirety of their useful life and only served a function within an engine, the Netwraps here continue to perform their compression function on a hay bale once they have exited the baling machine.

In *Mita Copystar*, we held that toner cartridges for photocopying machines were parts of the photocopier. 160 F.3d at 713. However, at issue in *Mita Copystar* was the toner *cartridge*, which included both the cartridge housing and toner inside. In the earlier-decided case, *Mita Copystar v. United States* (*Mita I*), which concerned only characterization of the toners and associated chemical developers, not the cartridges, we determined that the toners and developers were properly characterized as "chemical preparations for photographic use." 21 F.3d 1079, 1081 n.1, 1084 (Fed. Cir. 1994). The follow-on decision in *Mita Copystar* differed from *Mita I* in that the product at issue in *Mita Copystar* included the cartridge housing that mechanically interacted with the machine to deliver and apply toner to paper. Here, RKW argues that the Netwraps are analogous to the toner and the cardboard core that the Netwraps are wound on is analogous to the cartridge, and thus the Netwraps are a part of the machine. Appellant's Br. 23. This argument assumes that the cardboard core, like the cartridge housing in *Mita Copystar*, is a part of the machine. However, here, the HTSUS specifically excludes the cardboard core from being a part of an agricultural machine. Note 1(c) to the HTSUS section containing Chapter 84 explicitly excludes "[b]obbins, spools, cops, cones, cores, reels or similar supports of any material" from classification within that section.[2] We therefore find RKW's analogy lacking and do not understand *Mita Copystar* to control the classification of the Netwraps.

Additionally, under the "dedicated solely for use" inquiry, the article cannot be a distinct and separate commercial entity. "[W]here an article 'performs its separate

---

[2] We also note that here, unlike a printer cartridge and a printer, the cardboard core is not mechanically interacting with any component of the machine to output the bale of hay. *See* J.A. 127, 215–16.

function without loss of any of its essential characteristics,' and, whether separate or joined, is 'complete in itself,' that article is a 'distinct and separate commercial entity' and not a 'part.'" *ABB, Inc. v. United States*, 421 F.3d 1274, 1277 (Fed. Cir. 2005) (quoting *Willoughby Camera*, 21 C.C.P.A. at 325). Here, the Netwraps constitute a complete product even without the baling machine. The record also reflects that the Netwraps and baling machines are sold separately because neither RKW nor its parent company RKW SE sells any kind of harvesting or agricultural machinery. While an item that is sold separately and has an independent commercial demand is not necessarily excluded from being a part, such features of a commercial article are certainly probative. *See Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1354 (Fed. Cir. 2002) (holding roller skating protective gear was not classifiable as "parts" of roller skates and noting that the gear "sell[s] separately from the roller skates"). In light of our foregoing analysis, under the circumstances, we conclude that the Netwraps are commercial articles that are distinct and separate from baling machines.

## II

RKW also challenges the CIT's determination that the Netwraps are not integral to the function of the baling machine. We agree with the government that a baling machine is capable of performing its function of collecting crop pieces and compacting those pieces into the shape of a bale without the Netwraps. *See* J.A. 46 (Defendant's Statement of Undisputed Facts ¶ 21), 49 (Plaintiff's Response ¶ 21). Netwraps are no more "integral" to the baler machine's function than the hay the machine compresses into a bale. We thus agree with the CIT that the Netwraps "have their own distinct function—to maintain the shape of the bale *after it has been compressed* and released from the baler." *CIT Decision*, 592 F. Supp. 3d at 1359 (emphasis added). We therefore determine that the Netwraps are

not integral to the compression function of the baling machine.

## III

RKW does not present any basis for classifying the Netwraps as parts beyond the points discussed above. Because we determine that the Netwraps are not dedicated solely for use with baling machines and are not an integral, constituent, or component part of baling machines, we hold that the Netwraps are not a part of harvesting machinery or other agricultural machinery. We therefore need not address whether classification as a part of a machine under Chapter 84 prevails over a classification as other warp knit fabric under Chapter 60.

## CONCLUSION

We have considered RKW's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the CIT's denial of RKW's motion for summary judgment and grant of the government's cross-motion for summary judgment.

**AFFIRMED**